In the Matter of CENTURY GLOVE, INC., a Delaware corporation, Debtor.

CENTURY GLOVE, INC., Plaintiff,

v.

Alan V. ISELIN, First American Bank of New York, and Richard Haskel, Defendants.

Bankruptcy No. 85–438.
Adv. No. 86–10.

United States Bankruptcy Court, D. Delaware.

Jan. 28, 1993.

---

Eduard F. von Wettberg, III and P. Clarkson Collins, Jr., Wilmington, DE, for debtor/plaintiff.

A. Gilchrist Sparks, III, Edmond D. Johnson and David G. Thunhorst, Wilmington, DE, for defendant First American Bank of New York.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

Century Glove, Inc., a Chapter 11 debtor in this court, commenced an adversary proceeding against Alan V. Iselin, First American Bank of New York (FAB), and Richard Haskel on February 10, 1986. FAB moved to dismiss. Century responded by amending its complaint. FAB renewed its motion, and briefing ensued. FAB later requested, and this court granted, an opportunity for the parties to supplementally brief some of the issues its motion raised. The supplemental briefing was completed in July 1991. This is the court's decision on the motion to dismiss in this core proceeding. 28 U.S.C.A. § 157(b)(2)(B), (E), (F) & (O).

I. *Facts As Alleged In Century's Complaint*

The amended complaint alleges the following facts. Century is a manufacturer and seller of gloves, with gross annual sales in 1983 and 1984 of approximately $10,000,000. Southwest Gloves and Safety Equipment, Inc. is a subsidiary and major customer of Century, as well as a distributor of Century's products. FAB was Century's primary lender and essentially its sole source of credit prior to its bankruptcy.

In August 1983, Alan V. Iselin, who formed an investor group that acquired Century, became president and chief executive officer of Century. In September 1984, Bankers Trust Company of Albany, N.A. (BTCA), a predecessor in interest to FAB, made a seven-year term loan to Century in the amount of $2,000,000 and estab-

lished a $1,000,000 revolving credit line for Century. To secure this credit facility, BTCA acquired a security interest in Century's plant and equipment at its primary manufacturing facility in Georgia, and a floating lien on certain of its inventory, accounts receivable, and proceeds.

At some point in time (the complaint does not specify when), FAB and Century executed a loan agreement that defined a default to include the following—if, without FAB's consent, Iselin ceased to be the chief executive officer for any reason other than his death or disability.

The complaint further alleges that since August 1983, Iselin neglected his responsibilities for the operation of Century, failed to arrange or plan for the long-term needs of Century, and engaged in other misconduct that resulted in economic detriment to Century but benefitted FAB. FAB conspired with Iselin to keep him in charge of Century, and aided and abetted him in furtherance of some of this misconduct to benefit their interests. Century lost $1,000,000 in fiscal year 1985, and was insolvent after January 31, 1985.

Beginning in October 1985, FAB foreclosed on assets of Century, including applying funds held in FAB accounts to outstanding loans from FAB. During the 90–day period prior to the filing of Century's Chapter 11 petition, Century transferred to FAB in excess of $345,122.00 in proceeds and receivables.

Century filed its Chapter 11 petition on November 14, 1985. The court takes judicial notice that FAB has filed a secured claim and an unsecured claim in this case for $2,061,973.91 and $2,268,171.30, respectively.

Claims five through twelve of Century's complaint seek relief against FAB, either solely, or in conjunction with Iselin. Claim five seeks equitable subordination of FAB's allowed claims. Claim six is in the nature of a preference action related to claim five. Claim seven seeks to void the transfer of $345,122.00[1] pursuant to 11

---

1. Claim 7 states that the preferential amount is $545,122.00, however, all other references in the

U.S.C.A. § 547. Claim eight seeks a turnover of $345,122.00. Claim nine alleges FAB's foreclosure and seizure of Century's assets was unlawful and requests this court to void the subsequent transfers of property. Claim ten seeks an order imposing a constructive trust with respect to any assets of Century which FAB has acquired. Claims eleven and twelve are in the alternative and seek damages of $5,000,000 based on the wrongful conduct of FAB and Iselin.

## II. *The Legal Standard*

In deciding this motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must assume all the factual allegations are true and view reasonable inferences therefrom in the light most favorable to Century. In determining whether the complaint thus viewed states legally sufficient claims, the court should not dismiss any claim unless it appears beyond doubt that Century can prove no set of facts in support of that claim which would entitle it to relief. *E.g., Matter of Reitz*, 134 B.R. 131, 132 (Bankr. D.Del.1991).

In addition to this general standard, however, FAB's motion requires this court to consider doctrines relating to the pleading requirements for specific claims and intermediate conclusions of law. These doctrines will be discussed in the appropriate context. Claims five through twelve will be discussed in a sequence that relates to their factual similarity.

## III. *Discussion of Claim Five*

### A. Century Has Standing To Seek Equitable Subordination.

■ FAB moves to dismiss claim five for three independent reasons. FAB first argues that the claims should be dismissed because Century lacks standing to seek the remedy of equitable subordination. This argument is without merit. The cases FAB cites acknowledge that a trustee has standing to seek equitable subordination. Here, no trustee has been appointed, and

pleadings are to the amount of $345,122.00. The court assumes the $545,122.00 amount is a

"a debtor in possession [has] all of the rights ... and powers, and shall perform all the functions and duties of a trustee...." 11 U.S.C.A. § 1107(a); *see generally Construction Management Services v. Manufacturers Hanover Trust Co. (In re Coastal Group)*, 125 B.R. 730, 732 (Bankr.D.Del.1991). Century has standing.

### B. Century's Pleadings May Seek Both Legal And Equitable Remedies.

■ FAB next argues that Century may not seek equitable subordination because it has an adequate remedy at law. A debtor may not obtain both equitable subordination and an award of money damages which would compensate it for the damages resulting from the same conduct. *In re Kansas City Journal-Post Co.*, 144 F.2d 791, 801 (8th Cir.1944). On the contrary, equitable subordination is a remedy available only when damages cannot be reasonably ascertained. *Taylor v. Standard Gas Co.*, 306 U.S. 307, 323, 59 S.Ct. 543, 550, 83 L.Ed. 669 (1938). In claims eleven and twelve, Century has alleged that FAB's misconduct damaged it and claims an amount of $5,000,000. Century relies upon this same misconduct as the basis for its equitable subordination claim in claim five. Therefore, FAB is correct that Century cannot *ultimately* prevail upon both types of claims.

However, Century is equally correct that it can plead alternate and inconsistent forms of relief. Fed.R.Civ.P. 8(a)(3). This is a court of both law and equity. Century does not presently know that it will prevail on its legal claims and FAB cannot force Century to elect its remedy at the pleading stage. FAB's second ground in support of its motion to dismiss is rejected.

### C. Century States A Claim For Equitable Subordination.

FAB's third argument is that, as a matter of substantive bankruptcy law, the specific facts Century has pled, as distin-

typographical error.

guished from those allegations which are conclusory, do not state a claim for equitable subordination.

The remedy of equitable subordination is provided for in 11 U.S.C.A. § 510(c), however, when the remedy should be granted has been left to the courts to determine. The parties agree that the remedy is available only in the circumstances described in *Benjamin v. Diamond (In re Mobile Steel)*, 563 F.2d 692, 700 (5th Cir.1977):

1. The claimant must have engaged in some type of inequitable conduct;

2. The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and

3. Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code].

*See also In re Ludwig Honold Mfg.*, 46 B.R. 125, 128 (E.D.Pa.1985) (adopting *Mobile Steel* standard). FAB also agrees that the second and third prongs of this standard have been alleged. FAB does argue that, as a matter of law, Century's allegations do not satisfy the first prong requiring inequitable conduct.

■ The degree of inequitable conduct required to trigger the subordination remedy depends upon whether the creditor is a fiduciary of the debtor. If the creditor is not a fiduciary, the debtor must allege a more egregious level of misconduct to subordinate the creditor's claims. *See generally In re Ludwig*, 46 B.R. at 128–29 (discussing application of equitable subordination in both a fiduciary and non-fiduciary context). Century argues that the facts it alleges are sufficient to create a fiduciary relationship between FAB and Century, and in the alternative, that FAB's conduct is otherwise sufficiently egregious to warrant the remedy of subordination. These arguments will be addressed separately.

1. Century Has Properly Alleged FAB was a Fiduciary.

■ The Debtor's theory that FAB was a fiduciary of Century is based upon the legal conclusion that Iselin was the "alter-ego, agent, and instrumentality of FAB."

Plaintiff's First Amended And Supplemental Complaint, docket no. 30 [hereinafter Complaint], ¶ 21. Century does not dispute that paragraph 21, standing alone, is insufficient to withstand a 12(b)(6) motion. It concedes that specific facts must be alleged to support a finding that the debtor was the alter-ego of the creditor. *E.g., In re Badger Freightways*, 106 B.R. 971 (Bankr. N.D.Ill.1989).

To pursue an "alter ego" theory as the basis for showing a fiduciary relationship, FAB must exert "dominion and control" over the debtor. *Id.* at 977. Viewing the inferences from the complaint in the light most favorable to Century, the court discerns two related, but independent factual theories in support of its "control" argument.

■ First there is the theory that Iselin himself was a mere agent of FAB. In support of this theory, Century alleges that at the time he was an officer of Century, Iselin served as a member of the advisory committee of FAB, was heavily indebted to FAB, and had a close personal relationship with FAB officers and employees who were responsible for managing financial accounts of Century and Iselin. ¶ 20. Century concludes in paragraph 20 that "FAB's influence over Iselin was sufficient to cause him to act or fail to act as it directed." *Id.*

■ These allegations are insufficient as a matter of law. The complaint demonstrates a relationship between Iselin and FAB, and a *potential* for FAB to influence Iselin. The mere potential for control is not equivalent to control. *See Comstock v. Group of Institutional Investors*, 335 U.S. 211, 229, 68 S.Ct. 1454, 1463, 92 L.Ed. 1911 (1948); *In re Aluminum Mills Corp.*, 132 B.R. 869, 895 (Bankr.N.D.Ill.1991); *accord Gilbert v. El Paso Co.*, Del. Ch., 490 A.2d 1050, 1056 (1984). The complaint does not specify how FAB actually influenced Iselin to the extent of causing him to act as it directed. Iselin was not an employee of FAB. There are no allegations that FAB actually threatened Iselin with respect to his indebtedness, or that Iselin acceded to

these threats. *See generally In re Badger Freightways*, 106 B.R. 971, 978–79 (Bankr. N.D.Ill.1989) (requiring debtor to specifically allege how the purported relationship between the two officers and the Bank was formed, the terms of the arrangement, and the circumstances that motivated the employees to serve in such a capacity).

■ Century's second control theory is that FAB and Iselin had a common plan to control Century. FAB and Iselin agreed to operate Century for their own sole benefit, and without regard to the interests of Century. ¶¶ 26, 26(a). Part of this plan included liquidating Century rather than operating it as a going concern. ¶ 21. The court has carefully read all the specific acts of misconduct of the complaint to determine which ones can reasonably be inferred as being consistent with this plan. There are only a few. Century owned some knitting machines which constituted a critical part of its productive capacity. Iselin, without board approval, caused Century to sell all these machines, at less than market value. ¶ 24(d). FAB actively insisted on and assisted in this sale. ¶ 26(b). Iselin sold to Tom Thumb, Inc. other machinery outside the ordinary course of business without board approval and at an unreasonably low price. ¶ 34(m). FAB encouraged and assisted in this sale too, and obtained the sale proceeds. ¶ 26(g). Iselin also caused Century to pay amounts to FAB it was not entitled to under a loan agreement. ¶¶ 25(c); 26(d). Thus, the complaint properly alleges a plan between FAB and Iselin as independent parties, but acting in concert, to control Century with an objective of liquidating it to benefit them both (the plan theory).

The properly pled scope of this plan is much more limited than Century suggests in its conclusory statements contained in its complaint and briefing. This observation, however, merely limits the extent to which the subordination remedy should be applied. Moreover, it is possible that through discovery, Century will learn of additional acts of misconduct consistent with the plan that will allow it to expand the extent of subordination.

FAB relies heavily upon *In re Badger Freightways*, 106 B.R. 971 (Bankr.N.D.Ill. 1989) for the proposition that Century's allegations are insufficient at the pleading stage. In that case, under somewhat similar facts, the court held that the allegations concerning the existence of an arrangement to control the Debtor Badger through two corporate officers were insufficient to make the creditor bank a fiduciary. The court granted the bank's motion to dismiss. *Id.* at 978.

That court's holding will not be applied here. First, the facts here are materially different from those in *Badger*. Badger's complaint was based primarily upon an "agency" theory, without proper supporting allegations. The *Badger* court's reasoning in that regard has already been adopted here. With regard to Badger's arrangement to control theory, the complaint did not allege any details as to why the officers agreed to the plan or details of what they did in furtherance of that plan. *Id.* at 978. In contrast, the complaint here alleges not only a plan, but a purpose for the plan and specific instances of misconduct by Iselin in which FAB assisted.

Second, the judge who wrote *Badger* himself retreated from its harsh result in the later case of *In re Aluminum Mills Corp.*, 132 B.R. 869 (Bankr.N.D.Ill.1991). In that case, the court distinguished *Badger*, and held that the complaint should not be dismissed. It observed that the complaint alleged an ability of the creditor bank to control the Debtor, specific instances where that ability was exercised, and why the Debtor's officers would act consistent with the bank's wishes. 132 B.R. at 895.

The *Aluminum Mills* case also accords with the reasoning with *In re Kelton Motors, Inc.*, 121 B.R. 166 (Bankr.D.Vt.1990). In that case the Debtor Kelton Motors claimed defendant financiers were part of a conspiracy to drive it out of business for their mutual benefit so that, among other things, they could take over its auto sales business. Kelton alleged some specific acts of the financiers and claimed that these acts resulted in the destruction and

liquidation of the business to the injury of Kelton and its creditors. *Id.* at 172.

The *Kelton* court ultimately concluded that these allegations sufficiently alleged the elements of equitable subordination— inequitable conduct and injury to the Debtor and its creditors. *Id.* at 191. The court also observed that dismissal on the grounds of insufficient specificity was particularly inappropriate where the supporting material facts and documents may be in the possession of the defendants. *Id.* Applying the reasoning of these cases here, Century *has* properly alleged FAB controlled it to a certain extent through the common plan and subsequent acts of Iselin.

■■■ FAB also argues, as an independent ground in support of its motion to dismiss claim five, that an essential part of this "plan" theory is that FAB refused to waive the provision in the loan agreement that would allow Century to remove Iselin from his position of control without creating a default. FAB argues that the caselaw holds such a refusal is not inequitable conduct.

FAB's characterization of the caselaw is correct, however, that law is not helpful here because FAB's refusal is not an essential part of Century's theory. The focus of the complaint is not that FAB's conduct was inequitable because of its refusal to waive the default provision (although this is included as one example of FAB's conduct), but that FAB and Iselin participated in a plan to liquidate Century for their own benefit, and to the detriment of Century.

This observation distinguishes the cases cited by FAB, which focused on whether the mere exercise of contractual rights, or failure to waive those rights, amounted to inequitable conduct. For instance, in *In the Matter of Clark Pipe and Supply Co.*, 893 F.2d 693, 700 (5th Cir.1990) (*rh'g en banc*), *withdrawing* 870 F.2d 1022 (1989), *rh'g denied* 899 F.2d 11 (1990), the court observed that "Associates had the right to reduce funding, just as it did," despite Associate's self-described motivations "to get in the best position ... prior to the bankruptcy." The court was careful to distinguish between such:

> unilateral remedies that a creditor may properly enforce pursuant to its agreements with the debtor *and other inequitable conduct such as fraud, misrepresentation, or the exercise of such total control over the debtor as to have essentially replaced its decision-making capacity with that of the lender.*

*Id.* at 701 (emphasis added). Century's complaint alleges such other inequitable conduct as *Clark Pipe* requires. Century's plan theory in support of the ground that FAB was a fiduciary is sufficient to withstand FAB's motion to dismiss.[2]

### 2. Century Has Alleged Sufficient Inequitable Conduct In The Absence Of A Fiduciary Relationship.

■■■ Century's alternative legal ground in support of claim five's request for equitable subordination is that absent a fiduciary relationship, FAB's conduct was still sufficiently egregious to warrant equitable subordination. This requires Century to show conduct "tantamount to 'fraud, overreaching or spoliation to the detriment of others.'" *Badger*, 106 B.R. at 979 (citing *In re Teltronics Services, Inc.*, 29 B.R. 139, 169 (Bankr.E.D.N.Y.1983)); *see also In re Dry Wall Supply*, 111 B.R. 933, 938, 939 (D.Col.1990) (requiring "gross" misconduct).

For this ground, Century relies upon the same allegations:

1. FAB refused to waive the provision of the loan agreement that created a default if Century removed Iselin without FAB's consent; and

2. FAB participated in a plan to liquidate Century for its benefit.

Applying the reasoning of *Badger* and *Clark Pipe* here, FAB's refusal to waive the default provision bargained for at

---

**2.** The court's rulings in this section mean that since Iselin is not FAB's agent, only those acts of Iselin that have been properly alleged to be part of the common plan between him and FAB may be imputed to FAB. These rulings will thus impact the analysis of Century's other claims (nine, eleven, and twelve) that also rely upon the "agency" theory.

arms-length does not constitute inequitable conduct.

However, on the present record, FAB has not persuaded this court that Century can prove no set of facts relating to FAB's active participation in a plan to liquidate Century that would create the degree of inequity to justify subordinating FAB's allowed claims. Thus, the allegations in support of claim five are sufficient to withstand FAB's motion to dismiss.

Assuming that Century is ultimately entitled to its equitable remedy of subordination, *see supra* section III.B. (Century cannot ultimately prevail on both its legal and equitable remedies arising out of the same misconduct), it will have to show a causal link between FAB's inequitable conduct and the amount of claims it seeks to subordinate. *Mobile Steel*, 563 F.2d at 701 (claims should be subordinated only to the extent necessary to offset the harm which the debtor and its creditors suffered on account of the inequitable conduct).

## IV. *Claim Six Is Dismissed*

Claim six alleges a voidable preference, not on the basis of a statute such as 11 U.S.C.A. § 547, but "[a]s a result of the equitable subordination." Complaint, ¶ 51. FAB reasons Century is not entitled to this remedy in addition to the equitable subordination itself, which, under *Mobile Steel*, would offset whatever harm was inflicted. Century has not responded. Claim six is dismissed.

## V. *Century's Ninth Claim Is Dismissed*

Century claims "FAB's foreclosure and seizure of Century's assets beginning on or about October 22, 1985, was unlawful, wrongful and fraudulent," ¶ 60, and requests this Court void such transfers. ¶ 61. Century has presented two legal theories in support of this novel claim.

The first theory is that because of various inequitable conduct, FAB caused Century's default of its loan agreement with FAB and should be required to disgorge assets to the extent it has been unjustly enriched. ¶ 60(a). Century relies in part upon FAB's misconduct of refusing to allow Iselin to be replaced—this conduct cannot provide the basis for the equitable relief Century seeks. *Clark Pipe*, 893 F.2d 693, 700.

Century also relies upon the same acts of misconduct by Iselin that were discussed in connection with claim five. ¶ 60(a). These facts also fail to state a claim to void all transfers of property to FAB. First, the equitable remedy Century seeks would be a significant expansion of the remedy of equitable subordination. Moreover, in contrast to Century's subordination claim (claim five), which is based upon an explicit provision of the Bankruptcy Code, § 510(c), this claim has no basis in the Code.

The remedy Century seeks also appears to conflict with the elements of a voidable preference action pursuant to 11 U.S.C. § 547 (which Century has explicitly pled in claim seven). A careful review of that statute reveals a precise standard for defining when a creditor has been unjustly enriched within the context of a bankruptcy proceeding and its corresponding general theme of equality of distribution. Century should not be allowed to avoid these explicit requirements here through a general unjust enrichment claim. *Cf. Mobile Steel*, 563 F.2d 692, 700 (equitable remedy not allowed when inconsistent with the Bankruptcy Code). Not surprisingly, Century has cited no bankruptcy cases in support of this theory.

Moreover, assuming that such an equitable remedy could be appropriate, Century's pleadings are insufficient. There are no factual allegations supporting the conclusion that FAB was unjustly enriched by the transfers—that FAB benefitted by the transfers in an amount exceeding the default amount under the loan agreement, and indeed, the pleadings suggest that FAB was entitled to these transfers pursuant to the loan agreements. *See generally* 66 Am.Jur.2d *Restitution and Implied Contracts*, § 3, at 945 (2d ed. 1973).

Neither are there factual allegations supporting the conclusion that the purported value of the transfers was less than the actual value of the transfers, which would allege a related form of unjust enrichment. *See id.* The complaint does not allege the purported value of the transfers, the actual value of the transfers, or any basis to infer that the purported value was less than the actual value.

■■■ In paragraph 60(b), Century sets forth its second legal theory in support of its avoidance request—that FAB procured through its agent Iselin the transfer of the foreclosure assets with actual intent to hinder, delay or defraud unsecured creditors to whom Century was indebted. The court finds this theory equally deficient. The agency argument, which is Century's sole reason to impute acts of Iselin to FAB, has already been rejected. *Supra* section IV.C.

■■■ If Century is to state a claim under paragraph 60(b) therefore, it will have to be on the basis of acts of FAB and Iselin that were part of the plan discussed *supra,* Section IV.C.1. Presently, the complaint cites three actions of FAB in support of the request to void all transfers to FAB. FAB assisted in a sale of Century's critical knitting equipment at a price below book and liquidation value. ¶ 26(b). FAB encouraged and assisted in the sale of equipment to Tom Thumb, Inc., the proceeds of which FAB obtained. ¶ 26(g). FAB aided and abetted Iselin and Haskel[3] in their adoption of a liquidation plan for Century, which was in breach of their fiduciary duties. ¶ 26(h).[4] The complaint fails to demonstrate how these facts are related to "FAB's foreclosure and seizure of Century's assets," ¶ 60, or to the elements of a fraudulent transfer claim under either 11 U.S.C.A. § 548 or the common law Century cites. *E.g., Bugeja v. Davis*, 34 Misc.2d

276, 228 N.Y.S.2d 216 (N.Y.Sup.Ct.1962). Claim nine is dismissed.

## VI. *The Tenth Claim Is Dismissed*

Claim ten alleges that FAB was unjustly enriched as a result of its "misconduct." ¶ 63. Because Century has failed to allege how FAB was unjustly enriched as discussed in Section V, *supra,* claim ten is also dismissed.

## VII. *Discussion Of The Eleventh And Twelfth Claims*

■■■ Claim eleven states:

As a result of the wrongful conduct of FAB and FAB's agent Iselin consisting of neglect, waste, mismanagement and breach of fiduciary duty, Century has been damaged ... in excess of $5,000,-000.

Complaint, ¶ 66. The portion of this claim that relies upon the conduct of Iselin merely as an agent of FAB must be dismissed. Century asserts, however, that on the basis of the applicable corporate law, claim eleven is still viable pursuant to those acts of Iselin that that breached his fiduciary duty *and* were part of the common plan. The issue thus becomes whether FAB's knowing participation in Iselin's breach of his fiduciary duties creates liability on the part of FAB to Century. This issue is considered below, in the discussion of the legal sufficiency of Century's twelfth claim.

■■■ Century's twelfth claim contains two separate claims. The first claim alleges:

As a result of FAB's conspiracy with Iselin to maintain Iselin in his Century offices and to operate Century in the best interests of FAB rather than Century as their objective, their plan to effect the liquidation of Century, ... FAB is jointly and severally liable with Iselin for

---

**3.** Century does not allege that Haskel, the other co-defendant, was an "agent" of FAB.

**4.** To the extent possible, the court has eliminated from the allegations those phrases such as "unjust enrichment", "*ultra vires,*" "wrongfully," and "unlawfully," that are legal conclusions

within the context of this complaint and are not substantiated elsewhere in the complaint. Such legal conclusions are not considered in a 12(b)(6) motion. *See e.g., Pennsylvania House, Inc. v. Barrett,* 760 F.Supp. 439, 449–50 (M.D.Pa. 1991).

damages in an amount ... in excess of $5,000,000.

Complaint, ¶ 68 (the conspiracy claim).

The second claim alleges:

[A]s a result of the assistance provided by FAB to Iselin and FAB's participation with Iselin in connection with Iselin's commission of wrongful, illegal and unauthorized acts causing harm to Century, ... FAB is jointly and severally liable with Iselin for damages in an amount ... in excess of $5,000,000.

¶ 68 (the participation claim).

With respect to the two claims of claim twelve, and the remaining claim of claim eleven, the issue of which state law to apply arises. In its initial briefing, FAB asserted New York law applies. Century answered that Delaware law applies, but that there is no material difference between the two jurisdictions, and cited law from both jurisdictions. FAB never explicitly responded to Century's assertion, however, FAB's reply brief, as well as its supplemental briefs cite Delaware law in addition to New York law. In light of the parties' amorphous positions, and in consideration that the present record is not sufficiently developed to rule on the choice of law issue, the court will deny FAB's 12(b)(6) motion on claims eleven or twelve if the claims therein are sufficient under the law of either State.

 In New York, an entity may be held liable in tort for conspiracy to do an unlawful thing, or to do a lawful thing in an unlawful manner. *Arlinghaus v. Ritenour*, 622 F.2d 629, 639 (2d Cir.1980) (citing New York law). Century has not argued the second prong of this standard applies here. Hence, Century's complaint must properly allege:

1. That Iselin acted unlawfully; and

2. That FAB conspired with Iselin in those acts.

Two of the three acts alleged in the conspiracy claim of paragraph 68, that Iselin operated Century and liquidated Century in the best interests of FAB rather than Century satisfy the first requirement. Iselin, as CEO of Century, had a fiduciary duty to act in the best interest of Century, and the complaint fairly states that he did not act in Century's best interests. The third alleged act of paragraph 68 (maintaining Iselin in his offices) cannot provide the basis for an unlawful act.

Applying the second *Arlinghaus* requirement to the revised conspiracy claim, the viability of this claim depends on whether Century has properly alleged that FAB conspired with Iselin in his operation and liquidation of Century in the interest of himself and FAB.

 New York law further holds that:

The allegation of conspiracy carries no greater burden, but also no less, than to assert adequately common action for a common purpose by common agreement or understanding among a group, from which common responsibility derives.

*Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1074 (2d Cir.1977) (citation omitted). The plaintiff must show "intentional participation with a view to furtherance of the common design." *Arlinghaus v. Ritenour*, 622 F.2d 629, 640 (2d Cir.1980) (citation omitted).[5]

According to the complaint, FAB and Iselin agreed to operate Century for their own sole benefit, and without regard to the interests of Century. ¶¶ 26, 26(a). Part of this plan included liquidating Century rather than operating it as a going concern. ¶ 21. Iselin, without board approval, caused Century to sell its knitting machines at less than market value, ¶ 24(d), and FAB actively insisted on and assisted in this sale. ¶ 26(b). FAB encouraged and assisted in the sale of equipment to Tom Thumb, Inc., the proceeds of which FAB

---

5. FAB has cited several federal cases applying a stricter standard to conspiracy pleadings. However, these courts were reviewing federal claims, and FAB has presented no argument why the pleading standard developed in a federal context should be applied to a state cause of action. *E.g., Kalmanovitz v. G. Heileman Brewing Co.*, 595 F.Supp. 1385, 1400–01 (D.Del.1984) (complaint alleged conspiracy to violate various federal securities laws).

obtained. ¶ 26(g). Iselin also caused Century to pay amounts to FAB it was not entitled to under the loan agreements. These allegations satisfy the pleading requirements of New York law.

■■■■■ Delaware law holds that a defendant who knowingly joins a fiduciary in an enterprise which constitutes a breach of his duty is jointly and severally liable for any injury which results. *E.g., Laventhol, Krekstein, Horwath & Horwath v. Tuckman,* Del.Supr., 372 A.2d 168, 169, 170 (1976). Similarly, Delaware recognizes liability for civil conspiracy when this standard is shown. *Gilbert v. El Paso Co.,* Del. Ch., 490 A.2d 1050, 1057 (1984). Thus, Century's allegations also satisfy the requirements of Delaware law.

■■■■ As the discussion here suggests, however, review of the applicable law of both States reveals no legal distinction between the conspiracy and participation claims of claim twelve and claim eleven (to the extent that they are properly pleaded). The essential elements and recoverable damages are the same. Thus, these three claims will be considered as one for the purposes of future proceedings in this adversary.

For each act of Iselin for which Century seeks damages from FAB, it will have to ultimately satisfy the elements of either New York or Delaware law. That is (for example, under New York law), for each act of Iselin, Century will have to prove a breach of fiduciary duty, ensuing damage, and that FAB intentionally participated in that act or that that specific act was part of a common plan.

## VIII. *Claim Seven Properly Alleges The Elements Of A Voidable Preference*

■■■ Paragraph 26(i) of Century's complaint states:

> During the 90–day period prior to the filing of [its petition], Century transferred to FAB in excess of $345,122 representing the cash proceeds of inventory and receivables in which FAB would have had a security interest but for the

bankruptcy. Century also transferred to FAB, as a result of the foreclosure alleged, *supra,* inventory and receivables acquired by Century since August 14, 1985 in which FAB would have had, but for the bankruptcy, a perfected security interest by reason of an after-acquired property clause in its Security Agreement with Century. The above transfers were in payment of antecedent debts owed by Century to FAB prior to the dates of the transfers.

In paragraph 54 (claim seven), Century states:

> The transfers alleged in Paragraph 26(i) ... caused a reduction, to the prejudice of other creditors holding unsecured claims, of the amounts by which the debts secured by the security interests ... exceeded the value of all security interests for such debt 90 days prior to the date of the filing of the petition in this proceeding. Such reduction ... in excess of $545,122 [sic], [constitutes] a voidable preference....

Claim seven is made pursuant to 11 U.S.C.A. § 547(c)(5). This section, which reads as an exception to the general preference section 547(b), contains its own exception as follows:

> The [debtor in possession] may not avoid ... a transfer—
>
> \* \* \* \* \* \*
>
> (5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of—
>
> (A)(i) ... 90 days before the date of the filing of the petition; or
>
> (B) the date on which new value was first given under the security agreement creating such security interest[.]

§ 547(c)(5). FAB contends that Century's seventh claim must fail for several reasons.

First, FAB contends that § 547(c)(5) deals only with transfers that create a perfected security interest (a legal proposition that Century does not dispute), and that FAB had a valid security interest in the transferred property prior to the transfers. As Century points out, however, it does not acquire rights in any of the property at issue until it receives the property, § 547(e)(3), and paragraph 26(i) only refers to property received during the 90–day preference period. Therefore, FAB did not receive a perfected security interest in the property until the subsequent transfers, so § 547(c)(5) *does* apply.

FAB also argues that § 547(c)(5) requires, and Century has failed to allege, that FAB, from the beginning of the 90–day preference period to the date of the filing of the petition, reduced the amount by which it was undersecured. Actually, FAB's arguments in this regard divide into two independent grounds. First, FAB argues that Century failed to allege that FAB was undersecured at the beginning of the 90–day preference period and that therefore it is impossible for FAB's undersecured position to be reduced as the result of the transfers. However, a plain reading of Century's allegations in paragraphs 26(i) and 54 indicate that Century *has* alleged that FAB was undersecured.

 Second, FAB argues that Century's allegations are insufficient because they allege that all the transfers of property to FAB consisted of property that FAB had a perfected security interest in at the time of transfer. FAB observes that under these facts, to the extent Century's outstanding debt was reduced, FAB's secured position was reduced by an identical amount. Mathematically then, these transfers could not reduce the amount of FAB's *undersecured* debt, as required by § 547(c)(5).

In response to this last argument, Century initially took the position that it only had to allege that FAB reduced the amount of debt during the preference period and relied upon *In re Savig,* 50 B.R. 1003 (D.Minn.1985) as support. In its supplemental briefing, however, Century appears to abandon its reliance upon the *Savig* case. To the extent that Century still relies upon *Savig,* the court holds that *Savig* misreads § 547(c)(5).

The proper interpretation of this section is found in a case FAB cites, *In re Ebbler Furniture and Appliances, Inc.,* 804 F.2d 87 (7th Cir.1986). The *Ebbler* court observed that "Section 547(c)(5) applies to situations where a secured creditor does not have sufficient collateral to cover his outstanding debt." *Id.* at 89. That court then discussed the application of the section:

> The first step in applying section 547(c)(5) is to determine the amount of the loan outstanding 90 days prior to filing and the 'value' of the collateral on that day. The difference between these figures is then computed. Next, the same determinations are made as of the date of filing the petition.... if there is a reduction during the 90 day period of the amount by which the initially existing debt exceeded the security, then a preference for section 547(c)(5) purposes exists.... Of course, if the creditor is fully secured 90 days before the filing of the petition, then that creditor will never be subject to a preference attack.

804 F.2d at 89.

The *Ebbler* case states the correct test for determining the existence of a § 547(c)(5) preference. 804 F.2d at 89.

 Century's allegations satisfy that test. While paragraph 26(i) does not satisfy *Ebbler,* the factual allegations of paragraph 54 do satisfy *Ebbler.* These two paragraphs appear inconsistent. Inconsistent pleadings, however, is not a ground to dismiss, *e.g., Taylerson v. American Airlines, Inc.,* 183 F.Supp. 882, 884 (S.D.N.Y. 1960) (applying Fed.R.Civ.P. 8(e)), and at this stage of the case, on the basis of paragraph 54, the court is not prepared to say that there is no set of facts Century could show consistent with its pleadings that would satisfy the requisites of § 547(c)(5).

## IX. *Claim Eight Properly Alleges A Turnover Action*

 In paragraph 26(j), Century alleges this court "entered an order which allowed

Century to use the cash collateral which had been seized by FAB." and that FAB violated this order by "[appropriating] $43,928.55 of such cash collateral and [applying] such funds against a Century note." Claim 8 seeks the return of these funds. FAB argues that these pleadings do not give it fair notice as to the nature of the claim. They do. FAB can use the tools of discovery to further inform itself as to details of the monies involved.

## X. *Conclusion*

An order in accordance with this Opinion is attached. While FAB's motion has been denied with respect to several claims, this Opinion has narrowed the permissible scope of those claims going forward and establishes the law of the case for all future proceedings.

### ORDER

AND NOW, January 28, 1993, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

1. The motion of First American Bank Of New York to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) claims five, seven, eight, eleven, and twelve is DENIED.

2. The motion of First American Bank Of New York to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) claims six, nine, and ten is GRANTED.

3. Century Glove, Inc. is granted leave to further amend its complaint within 20 days of the date of this order.