30 F.3d 137
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
In re UNIVERSAL FOUNDRY CO., Debtor,
Paul G. SWANSON, Trustee, Plaintiff-Appellee,
v.
FIRST WISCONSIN FINANCIAL CORP., Defendant-Appellant.
 No. 94-1108.
 United States Court of Appeals, Seventh Circuit.
 Argued June 9, 1994.
Decided Aug. 5, 1994.
 
 Before CUMMINGS, ESCHBACH and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 In an action brought by the trustee for Universal Foundry Company (Universal), the bankruptcy court avoided a number of transfers from Universal to First Wisconsin Financial Corporation (FWFC) as preferential under 11 U.S.C. Sec. 547(b). FWFC appealed to the district court under 28 U.S.C. Sec. 158(a) and the district court affirmed. Now FWFC appeals to this court under 28 U.S.C. Sec. 158(d). We affirm.
 
 I.
 
 2
 On September 5, 1984, Universal filed a chapter 11 petition for reorganization. After Universal's reorganization efforts failed, the bankruptcy court converted the case to a chapter 7 proceeding and appointed a trustee for Universal. After two interim trustees resigned, the bankruptcy court appointed Paul Swanson to liquidate Universal's assets.
 
 
 3
 Swanson sued two of Universal's creditors, FWFC and its parent corporation, First Wisconsin National Bank (Bank), alleging that they received preferential transfers under 11 U.S.C. Sec. 547(b) during the 90 days preceding Universal's filing of the bankruptcy petition. The trustee's suit also alleged that FWFC and the Bank were "insiders" of Universal who received preferential transfers under Sec. 547(b) between 91 days and one year before Universal filed its petition. After the trustee presented his evidence, the bankruptcy court granted the Bank's motion to dismiss all claims against it. At the conclusion of the trial, the trustee withdrew his claims against FWFC based on the one year preference period. Thus, the only issue left for the bankruptcy court to decide was whether FWFC received any preferential transfers during the 90 days preceding Universal's bankruptcy.
 
 
 4
 The transfers contested by the trustee concerned FWFC's blanket security interest in all of Universal's inventory, accounts receivable, and certain other assets. FWFC perfected these security interests several years before Universal filed its bankruptcy petition. As Universal acquired new inventory and generated new receivables during the 90 days prior to its bankruptcy filing, FWFC's security interest automatically attached to the assets and became perfected. The trustee argued that these transfers were avoidable under Sec. 547(b) and that FWFC was obligated to return the property transferred (or its value) to the bankruptcy estate.
 
 
 5
 FWFC defended itself under 11 U.S.C. Sec. 547(c)(5), arguing that its collateral position had not improved as a result of the transfers. After determining the amount of Universal's debt to FWFC and the value of FWFC's collateral on the day of Universal's bankruptcy filing and 90 days earlier, the bankruptcy court concluded that the transfers had improved FWFC's collateral position by reducing the amount by which Universal's debt exceeded FWFC's collateral by $354,575.16. The bankruptcy court permitted the trustee to avoid that amount as a preferential transfer under 11 U.S.C. Sec. 547(b).
 
 
 6
 FWFC appealed to the district court. It challenged the bankruptcy court's finding that the transfers constituted an avoidable preference, arguing that the bankruptcy court failed to consider whether the improvement in FWFC's collateral position operated "to the prejudice of other creditors holding unsecured claims." See 11 U.S.C. Sec. 547(c)(5). Additionally, FWFC challenged on two grounds the bankruptcy court's calculation of the amount of the preference. FWFC argued that the bankruptcy court erroneously applied a going-concern standard to value FWFC's collateral and improperly added certain sales to Universal's accounts receivable without making a corresponding deduction in the inventory balance.
 
 
 7
 In a lengthy opinion, the district court rejected each of FWFC's challenges and affirmed the bankruptcy court's decisions and orders.[1] FWFC now appeals to this court, raising the same three issues. We consider FWFC's claims under the same standards governing the district court. "We review factual findings of the bankruptcy court under a clearly erroneous standard, but review conclusions of law de novo (Bankruptcy Rule 8013)." In re Bonnett, 895 F.2d 1155, 1157 (7th Cir.1989).
 
 II.
 
 8
 Under 11 U.S.C. Sec. 547(b), a transfer is preferential if (1) it is made to a creditor, (2) on account of a pre-existing debt, (3) while the debtor is insolvent, (4) on or within 90 days before the date of the filing of the petition, and (5) enables the creditor to receive more than it would receive if the estate were liquidated under chapter 7 of the Bankruptcy Code. 11 U.S.C. Sec. 547(b). FWFC does not dispute that the trustee proved all five elements under Sec. 547(b). Rather, FWFC argues that the exception in Sec. 547(c)(5) defeats the trustee's attempt to avoid the transfer. Section 547(c)(5) provides:
 
 
 9
 (c) The trustee may not avoid under this section a transfer--
 
 
 10
 ... (5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt ...
 
 
 11
 (A)(i) ... 90 days before the date of the filing of the petition.
 
 
 12
 Section 547(c)(5) applies to an undersecured creditor holding a security interest or "floating lien" on the debtor's inventory or receivables that was perfected prior to the preference period. It allows the trustee to avoid any improvement in the secured creditor's position during the 90 days prior to the filing of bankruptcy which occurs at the expense of unsecured creditors. See In re Ebbler Furniture and Appliances, Inc., 804 F.2d 87, 89 (7th Cir.1986); 4 Collier on Bankruptcy p 547.13 at 547-60 to 61 (15th ed. 1992). Ebbler directs the bankruptcy court to compare the differences between the value of the creditor's debt and collateral on the day of filing and 90 days prior to determine whether the secured creditor's position improved during the 90 day period. Ebbler, 804 F.2d at 89-90.
 
 
 13
 In this case, the bankruptcy court performed the Ebbler two-step analysis and concluded that FWFC's collateral position had improved during the preference period by $354,575.16. FWFC argues that the bankruptcy court unnecessarily performed the two-step analysis because its transfers did not prejudice any creditors holding unsecured claims. Before the district court, FWFC argued that the transfers did not prejudice unsecured creditors because its parent company, the Bank, held perfected junior security interests in the same collateral. According to FWFC, in the absence of transfers to it, the Bank's junior lien would have absorbed any new inventory or receivables acquired or generated by Universal during the preference period and would thereby have prevented other unsecured creditors from recovering any of the inventory or receivables. Before this court, FWFC reasserts this claim and adds another. FWFC maintains that the increased value of its collateral caused no prejudice to unsecured creditors because its security interests encumbered all of Universal's assets during the preference period. Relying on In re Castletons, Inc., 990 F.2d 551, 556 (10th Cir.1993), FWFC argues that Universal generated all of its inventory and receivables during the preference period out of assets already encumbered by FWFC's security interests and as such, no unsecured creditor was harmed by the transfers.
 
 
 14
 We reject both of FWFC's arguments, essentially for the same reason--lack of proof. Section 547(g) plainly states that the creditor "against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section." At the bankruptcy hearing, FWFC focused on determining the size of its debt and the appropriate valuation of its collateral, arguing that it experienced no improvement in its collateral position during the preference period. Only after the bankruptcy court decided these issues against FWFC did it raise the issue of whether the transfers caused prejudice to other creditors holding unsecured claims.
 
 
 15
 Additionally, both of FWFC's arguments depend heavily upon factual assumptions which the record before this court does not fairly support. FWFC's lack of prejudice argument based on the Bank's status as a junior lien creditor rests on an unproven assumption that any transfer of security interests to the Bank would not also have been a voidable preference under Sec. 547(b). Similarly, FWFC's second "no prejudice" argument asserts, without any proof, that all of Universal's inventory and receivables generated during the preference period arose solely out of assets which were already encumbered by FWFC's security interests. In the absence of proof to the contrary, the bankruptcy court could reasonably assume that FWFC's improvement in its collateral position occurred at the expense of unsecured creditors who permitted Universal to continue operating, acquire new inventory, and generate new receivables. See 4 Collier on Bankruptcy, p 547.13 at 547-62. For these reasons, we conclude that the bankruptcy court's finding of a preferential transfer must be sustained.
 
 
 16
 As discussed above, FWFC raised two additional issues. FWFC challenges the bankruptcy court's use of a going-concern standard to determine the value of its collateral and the bankruptcy court's acceptance of the trustee's calculations as to the value of Universal's inventory and receivables. Because we agree with the district court's thorough and accurate resolution of these matters, further discussion is not necessary.
 
 III.
 
 17
 For these reasons, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 Swanson v. First Wisconsin Fin. Corp. ( In re Universal Foundry Co.), 163 B.R. 528 (E.D.Wis.1993)