In re John Robert MEYER, Debtor.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as successor to The Resolution Trust Corporation, as receiver for Far West Federal Savings Bank, Plaintiff,**

v.

**John Robert MEYER, Defendant.**

No. 96 C 1259.

United States District Court,
N.D. Illinois,
Eastern Division.

June 24, 1996.

John Robert Meyer, Hinsdale, IL, Pro Se.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

John Robert Meyer filed for Chapter 7 bankruptcy in April 1992. The Resolution Trust Corporation ("the RTC"), acting as receiver for Far West Federal Savings Bank, subsequently filed an adversary complaint against Meyer. The RTC sought a determination that Meyer's debts were non-dischargeable. On January 12, 1996, the bankruptcy court entered judgment against Meyer and in favor of the RTC. The bankruptcy court found that Meyer owed the RTC $3.45 million plus accrued interest, costs, attorneys' fees and accountants' fees, and that the debt was non-dischargeable.

Meyer appeals the bankruptcy court's judgment.

## BACKGROUND

### I. *THE HDI LOAN*

On June 10, 1988, Far West Commercial Finance Co. ("Far West Commercial") extended credit to Hydro–Dynamics, Inc. and Hydro–Dynamics of Colorado, Inc. (collectively "HDI"). In order to secure credit, HDI pledged its accounts receivable and inventory as collateral. The principals and officers of HDI, Meyer and Steven E. Spaudi, also personally guaranteed HDI's debts. On November 26, 1991, Far West Commercial declared HDI's loan in default and demanded payment from Meyer. Meyer did not pay, and thereby defaulted on his personal guaranty. In April 1992, Meyer filed for Chapter 7 bankruptcy.

Far West Commercial was the wholly owned subsidiary of Far West Federal Bank ("Far West Federal"). On March 18, 1987, Far West Commercial assigned to Far West Federal all its right, title and interest in Far West Commercial's present and future loans, but retained the right to service and administer these loans and to be compensated for the work. This assignment applied to Far West Commercial's loan to HDI. Far West Federal advanced moneys to Far West Commercial to fund the HDI loan.

On June 7, 1991, the Office of Thrift Supervision ("the OTS") appointed the RTC as receiver for Far West Federal. On the same day, the OTS approved the RTC's request for issuance of a new mutual savings association charter as a successor to Far West Federal, and for transfer of Far West Federal's assets to this successor, Far West Federal Savings Bank ("Far West Savings"). The RTC then entered into a purchase and assignment agreement whereby it assigned Far West Federal's loans and collateral to Far West Savings.

As with Far West Federal, Far West Savings failed. On April 15, 1994, the OTS appointed the RTC as receiver for Far West Savings.

## II. *THE ADVERSARY PROCEEDING*

After Meyer filed for bankruptcy in April 1992, the bankruptcy court granted Far West Commercial multiple extensions of time to file an adversary complaint against Meyer. On June 29, 1993, Far West Commercial filed its adversary complaint against Meyer. On December 30, 1993, Far West Commercial filed an amended adversary complaint.

During the course of discovery, Meyer discovered the agreement whereby Far West Commercial assigned to Far West Federal all its right, title and interest in Far West Commercial's present and future loans. Meyer then moved to dismiss Far West Commercial's complaint on grounds Far West Commercial had no claim against him. On May 20, 1994, the bankruptcy court found Far West Commercial lacked a claim against Meyer, but allowed the RTC, acting as receiver for Far West Savings, to substitute for Far West Commercial, and to file a second amended adversary complaint. On March 2, 1995, the RTC filed a third amended adversary complaint.

After trial on the RTC's third amended adversary complaint, the bankruptcy court permitted the parties to submit post-trial briefs in lieu of closing arguments. On January 2, 1996, the bankruptcy court entered judgment against Meyer and in favor of the RTC. The bankruptcy court found Meyer owed the RTC $3.45 million plus accrued interest, costs, attorneys' fees and accountants' fees. The bankruptcy court further found the debt non-dischargeable pursuant to various subsections of 11 U.S.C. § 523. The court found the entire debt non-dischargeable pursuant to § 523(a)(2)(B) because Meyer submitted a written and materially false personal balance sheet to Far West Commercial, and because both Far West Commercial and Far West Federal reasonably relied on the statement. The court also found the entire debt non-dischargeable pursuant to § 523(a)(2)(A) because Meyer made false representations in his guaranty to Far West Commercial upon which both Far West Commercial and Far West Federal justifiably relied. Finally, the court found $1.758 million of the debt non-dischargeable pursuant to §§ 523(a)(4) and (6) and § 523(a)(2)(B) for

**280**

other reasons that need not be discussed in detail.

### ANALYSIS

### I. STANDARD OF REVIEW

A proceeding to determine the dischargeability of a debt is a core proceeding. 28 U.S.C. § 157(b)(2)(I). Accordingly, the court reviews the bankruptcy court's findings of fact under the clearly erroneous standard, and the bankruptcy court's conclusions of law *de novo.* Fed.R.Bankr.P. 8013; *In re Ebbler Furniture & Appliances, Inc.,* 804 F.2d 87, 89 (7th Cir.1986).

### II. MEYER'S POST–TRIAL BRIEF

Meyer's appellate brief presents four arguments challenging the bankruptcy court's judgment. Meyer's appellate brief also states that it incorporates the arguments presented in Meyer's post-trial brief as grounds for reversal.

■■■ A party urging this court to reverse a bankruptcy court's judgment must explain why the court should reverse the judgment, and present legal authority in support of its arguments. *United States v. South,* 28 F.3d 619, 629 (7th Cir.1994); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991); *United States v. Brown,* 899 F.2d 677, 679 n. 1 (7th Cir.1990); *United States v. Petitjean,* 883 F.2d 1341, 1349 (7th Cir.1989); *United States v. Williams,* 877 F.2d 516, 518–19 (7th Cir.1989). "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983). Nonchalant or perfunctory treatment of an issue indicates a party considers the issue of little consequence, and therefore waives the issue. *South,* 28 F.3d at 629; *Berkowitz,* 927 F.2d at 1384.

■■■ Meyer's post-trial brief was submitted to the bankruptcy court before it entered judgment. The post-trial brief does not explain why this court should reverse the bankruptcy's court's judgment. In fact, because the brief was addressed to the bankruptcy court, it raises arguments inconsistent with this court's standard of appellate review. The brief also may raise arguments rendered moot by the bankruptcy court's judgment. Meyer's attempt to present arguments by reference to his post-trial brief also indicates a nonchalant and perfunctory attitude towards the arguments raised in his post-trial brief, and therefore waives those arguments. Under these circumstances, the court declines to comb through Meyer's post-trial brief and determine if any of the arguments presented there justify reversing the bankruptcy court's judgment.

■■■ The court recognizes that Meyer is a *pro se* litigant. As a general rule, *pro se* litigants are entitled to more lenient treatment by the court. *Kincaid v. Vail,* 969 F.2d 594, 598–99 (7th Cir.1992); *Ross v. Franzen,* 777 F.2d 1216, 1219 (7th Cir.1985). Meyer is no ordinary *pro se* litigant. He is a 1971 graduate of Harvard Law School who practiced law until he became involved with HDI. *Memorandum and Order,* Adversary No. 93 A 797 *8–9 (Bankr.N.D.Ill. Jan 12, 1996) ("the bankruptcy court opinion"). Accordingly, the court declines to consider the arguments presented in Meyer's post-trial brief based on his *pro se* status.

### III. RTC'S SUBSTITUTION

The bankruptcy court found Meyer's debts to the RTC non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (B), as well as §§ 523(a)(4) and (6). In order to pursue a claim of non-dischargeability under these sections, a party must file its claim within 60 days of the first date set for a meeting of the creditors, or obtain an extension of time to file its complaint. Fed.R.Bankr.P. 4007(c).[1]

---

1. Fed.R.Bankr.P. 4007(c) provides:

   A complaint to determine dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a).

   *   *   *   *   *   *

   On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The

Meyer points out the RTC did not file a complaint within the 60–day period specified by Rule 4007(c). Nor did the RTC move for an extension of time to file its complaint. Meyer concludes the RTC's adversary complaint is time barred.

Meyer concedes the RTC was granted leave to substitute for Far West Commerce, but argues the RTC's complaint is still time barred. Meyer reasons as follows. Under Fed.R.Civ.P. 17(a), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7017, "substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Under Fed.R.Civ.P. 3, made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7003, an adversary proceeding commences with the filing of an adversary complaint. Applying these rules to the RTC's substitution for Far West Commercial, the RTC's adversary complaint should be treated as if it were filed the day Far West Commercial's original complaint was filed, May 20, 1993. Even if the RTC's adversary complaint were filed on May 20, however, it would be time barred by the 60–day period specified in Rule 4007(c). This is because only Far West Commercial, not the RTC, moved for an extension of time to file an adversary complaint against Meyer.

Meyer's argument is clever. It parses Rule 3 with an isolated portion of Rule 17(a) in a manner that appears to warrant the dismissal of the RTC's complaint. However, Meyer fails to demonstrate that Rule 17(a) is intended to distinguish between substitutions that involve an adverse complaint filed without an extension of time under Rule 4007, and substitutions that involve an adverse complaint filed with an extension of time. More importantly, Meyer's interpretation of Rule 17(a) appears to be inconsistent with *Wadsworth v. United States Postal Service,* 511 F.2d 64 (7th Cir.1975), the only case cited by the parties addressing Rule 17(a). In that case, the Seventh Circuit found the joinder of a real party in interest proper under Rule 17(a). However, the court did not find joinder proper because the amended complaint that joined the real party in interest

would not violate any jurisdictional criteria had it been filed on the day the original complaint was filed. Rather, the court found joinder proper because the original complaint did not violate any jurisdictional criteria, and because an understandable mistake was made with respect to the real party in interest. *Wadsworth,* 511 F.2d at 66–67 (7th Cir. 1975).

█ It is undisputed that Far West Commercial's original adversary complaint against Meyer was timely. In addition, an understandable mistake was made when Far West Commercial filed an adversary complaint against Meyer. The RTC should have filed the adversary claim because the 1987 agreement between Far West Commercial and Far West Federal assigned Far West Commercial's present and future loans (including its HDI loan) to Far West Federal. HDI's loan was subsequently transferred to Far West Savings and ultimately to the RTC. It is understandable that the RTC failed to file a complaint against Meyer prior to its substitution for Far West Commercial. Under the 1987 agreement, Far West Commercial retained the right to service and administer HDI's loan, and to be compensated for its work. This arrangement created the appearance that Far West Commercial, not Far West Federal, owned the loan. Furthermore, Meyer advances no argument the RTC's substitution for Far West Commercial prejudiced him in maintaining a defense on the merits. Accordingly, the RTC's adversary complaint is not time barred.

## IV. *RELIANCE*

Meyer contends Far West Savings did not reasonably or justifiably rely on his personal finance statement or his personal guaranty when it purchased HDI's loan. In support of this contention, Meyer asserts no evidence was introduced at trial showing that Far West Savings reasonably or justifiably relied on his personal finance statement or his personal guaranty. Meyer also emphasizes that the agreement assigning Far West Federal's loans and collateral to Far West Savings

motion shall be made before the time has expired.

Fed.R.Bankr.P. 4007(c).

provides that the loans were being purchased "as is," "where is," "without recourse," and "without any warranties whatsoever." Meyer concludes the bankruptcy court should not have applied § 523 to his debts.

The Supreme Court case Meyer cites in support of his reliance argument demonstrates that either reasonable or justifiable reliance is a necessary element to non-dischargeability determinations under §§ 523(a)(2)(A) and (B). *Field v. Mans*, —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). In addition, the bankruptcy court's opinion does not address any reliance by Far West Savings. Rather, the opinion only discusses reliance by Far West Commercial and Far West Federal. Bankruptcy court opinion at *8–9. Nor does the RTC's response address reliance by Far West Savings.[2] Hence, Meyer's contention that Far West Savings did not reasonably or justifiably rely on his personal finance statement or his personal guaranty appears to be uncontradicted by the record.

■ Nonetheless, Meyer presents no serious argument the bankruptcy court committed legal error when it implicitly concluded that the reliance element necessary to non-dischargeability determinations under §§ 523(a)(2)(A) and (B) is satisfied by Far West Commercial and Far West Federal's reliance on Meyer's personal finance statement and personal guaranty, regardless of any reliance by Far West Savings. In fact, Meyer does not even address the bankruptcy court's opinion. Nor does he discuss why a showing of reliance by Far West Savings (as opposed to Far West Commercial and Far West Federal) is necessary under the text of §§ 523(a)(2)(A) and (B),[3] or under case law involving loans that have been transferred from one institution to another, or case law

involving institutions under the receivership of the RTC. As a result, Meyer fails to adequately explain why the court should reverse the bankruptcy court's judgment. Meyer also fails to present meaningful legal authority to support his arguments. Accordingly, Meyer's reliance argument must fail.

## V. THE DISSOLUTION OF HDI

■ Meyer contends he cannot be held liable because HDI's debts "became due" after HDI was dissolved on September 10, 1990. Meyer cites *Cornick v. Hi Grade Cleaners*, 595 F.Supp. 718 (N.D.Ill.1984) and *Blankenship v. Demmler*, 89 Ill.App.3d 569, 44 Ill.Dec. 787, 411 N.E.2d 1153 (1st Dist. 1980) in support of this argument.

*Cornick* and *Blankenship* both involved claims against corporations that accrued after the corporations were dissolved. Both courts held such claims were not permitted under the Illinois "survival statute," which provides for certain suits against dissolved corporations. *Cornick*, 595 F.Supp. at 720; *Blankenship v. Demmler*, 44 Ill.Dec. at 790–91, 411 N.E.2d at 1156–57. The RTC is suing Meyer, not the dissolved HDI corporation. Meyer's bald statement that HDI's debts did not become due until after HDI was dissolved does not demonstrate that the RTC's claim against him, as guarantor of HDI's debts, did not accrue until after HDI was dissolved. Accordingly, *Cornick* and *Blankenship* have no apparent application to this case. Meyer fails to show he cannot be held liable for HDI's debts because HDI's debts "became due" after HDI was dissolved on September 10, 1990.

## VI. THE PERSONAL FINANCIAL STATEMENT

Meyer contends the bankruptcy court erred when it admitted the personal finance

---

**2.** It is actually the Federal Deposit Insurance Corporation ("the FDIC") that responds to Meyer's appeal as successor to the RTC. For simplicity's sake, the court refers to the FDIC as the RTC throughout this opinion.

**3.** Sections 523(a)(2)(A) and (B) except from discharge,

a debt for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

11 U.C.S. §§ 523(a)(2)(A) and (B).

statement he allegedly submitted to Far West Commercial. Meyer argues the statement was not properly authenticated.

The bankruptcy court determined that the statement was authenticated. Trial Tr. 638. That determination may be overturned only if clearly erroneous. *Stuart Park Associates Ltd. Partnership v. Ameritech Pension Trust,* 51 F.3d 1319, 1328 (7th Cir.1995); Fed.R.Bankr.P. 8013. There is significant circumstantial evidence that Meyer either prepared or adopted the personal finance statement as his own. The personal finance statement bears Meyer's name. Pl.Trial Ex. 8. Meyer testified at trial that the assets listed on the statement would have been accurate prior to his transfer of those assets to his wife two months earlier. Trial Tr. 458–65. Meyer was an officer of HDI, and copies of the statement were found in HDI's files. Copies of the statement were also found in the files of another company that extended credit to HDI. Bankruptcy court opinion at *5–6. Accordingly, it was not clear error for the bankruptcy court to admit the personal finance statement.

### CONCLUSION

The judgment of the bankruptcy court is affirmed.