129 F.3d 119
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
In the Matter of John R. MEYER, Drbtor-Appellant,
Fieldcrest Cannon, Inc., Appellee,
v.
John R. MEYER, Debtor-Appellant.
 No. 97-1135.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 14, 1997.*
Decided Oct. 21, 1997.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No 96 C 403; James F. Holderman, Judge.
 Before CUMMINGS, MANION, and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 John Meyer appeals a bankruptcy court judgment declaring his $298,411.33 debt to Fieldcrest-Cannon nondischargeable. The bankruptcy court found the debt nondischargeable under both 11 U.S.C. § 523(a)(2)(A) (obtaining credit through false pretenses) and 11 U.S.C. § 523(a)(2)(B) (obtaining credit by using false financial statements). Meyer appealed to the district court, which affirmed the judgment, and now brings this appeal. We affirm.
 
 I. Facts
 
 2
 Hydro-Dynamics, Inc. (HDI) manufactured bedsheets, principally for waterbeds. John Meyer was an officer and director of HDI from May 22,1987 until HDI's dissolution on September 10, 1990. After HDI's dissolution, Meyer continued his involvement with the company, which reincorporated under the same name in 1991.
 
 
 3
 HDI began purchasing cloth from Fieldcrest on credit in 1987. At the start of the relationship, HDI had a credit line of roughly $10,000 to $20,000. In mid-1988, HDI wanted to increase its credit line with Fieldcrest to $250,000. Because HDI was considered a credit risk, Fieldcrest asked for guarantees from both Meyer and Stephen Spaudie, a fellow officer and director. Fieldcrest required Meyer and Spaudie to submit financial information in support of their guarantees. The bankruptcy court found that on July 27, 1988, Meyer sent Fieldcrest both personal guarantees of HDI's debt and balance sheets for himself and Spaudie.
 
 
 4
 Meyer's balance sheet, dated July 24, 1988, indicated that he had a net worth of over $1,000,000. However, in March 1988, Meyer had assigned substantially all of his assets to his wife, which left him with an actual net worth of approximately $50,000. Meyer did not tell Fieldcrest about the assignment of assets to his wife Relying on the guarantees, Fieldcrest increased HDI's credit line to $250,000. HDI defaulted on its payments to Fieldcrest, and Fieldcrest demanded that Meyer, as a personal guarantor, pay the outstanding balance.
 
 
 5
 Meyer filed for Chapter 7 bankruptcy in July 1992. Fieldcrest filed an adversarial complaint to have the debt declared nondischargeable under 11 U.S.C. §§ 523 and 727. The bankruptcy court found the debt nondischargeable under § 523(a)(2)(A) because it found that Meyer's guarantee was fraudulent The court also found the debt nondischargeable under § 523(a)(2)(B) because of the false financial statement Meyer provided to Fieldcrest. Meyer appealed to the district court, which affirmed Meyer then appealed to this court, alleging error on five grounds.
 
 II. Standard of Review
 
 6
 We review the bankruptcy court's findings of fact for clear error. Fed. R. Bankr.P. 8013. Both the district court's and the bankruptcy court's legal interpretations are reviewed de novo. In re Birkenstock, 87 F.3d 947, 951 (7th Cir.1996). Meyer argues that whether Fieldcrest reasonably relied on the false financial statement is a mixed question of law and fact. However, we have previously held that the determination under § 523(a)(2)(B)(iii) of whether a creditor reasonably relied on a false statement is a question of fact. In re Bonnett, 895 F.2d 1155, 1157 (7th Cir.1989).
 
 
 7
 III. Waiver of Arguments in the District Court
 
 
 8
 Meyer complains that the district court improperly refused to consider arguments made for the first time in his reply brief. Meyer asserts that these arguments were made in his post-trial brief to the bankruptcy court, and incorporated by reference into his brief Meyer also attached to his brief in this court a General Order of the District Court for the Northern District of Illinois that he claims supports the practice of incorporating arguments found in briefs to the bankruptcy court by reference.
 
 
 9
 Meyer does not indicate in his briefs to this court exactly which arguments the district court considered waived, and the district court's opinion is similarly vague. Because Meyer does not tell us exactly which arguments he wanted considered, we cannot say that the district court erred in not considering them. A petitioner who wants relief must support his argument; this court does not have the responsibility of combing the record looking for support for a petitioner's argument. See Head Start Family, Educ. Prog., Inc. v. Cooperative Educ. Service Agency 11, 46 F.3d 629, 635 (7th Cir.1995).
 
 
 10
 We do not believe that the district court erred by refusing to consider arguments Meyer incorporated by reference in his brief. We note that Meyer used this strategy in another adversarial action arising out of this same matter. See In re Meyer, 197 B.R. 277, 280 (N.D.Ill.1996), aff'd, 120 F.3d 66 (7th Cir.1997). Neither district court accepted this tactic. Meyer does not present any authority that demonstrates that the district court has ever interpreted the general order in the same manner as he has, and we were not able to find any authority legitimating the practice on our own. The fact that two different district judges refused to consider arguments made by reference to briefs below strongly suggests that Meyer's reading of the order is not appropriate. Moreover, our precedents clearly indicate that perfunctory treatment of an issue constitutes waiver. See, e.g., United States v. South, 28 F.3d 619, 629 (7th Cir1994)
 
 IV. Section 523(a)(2)(B)
 Arguments
 
 11
 Meyer's next two contentions allege error in the finding of nondischargeability under § 523(a)(2)(B). Meyer attacks the authenticity of the financial statement, and the finding that Fieldcrest reasonably relied on the statement. However, we need not consider these arguments because Meyer fails to contest any issue material to the bankruptcy court's finding of nondischargeability under § 523(a)(2)(A).[1] Since § 523(a)(2)(A) provides an independent reason to affirm the nondischargeability of the debt. Meyer's arguments about the financial statement are moot.
 
 V. Amount of the Judgment
 
 12
 Meyer's final argument is that the amount of the judgment should be reduced to the amount due on September 10, 1990, when HDI was dissolved. However, the guarantee that Meyer signed indicates that "this agreement shall not be affected by any change in status of [HDI] through death, admission or withdrawal of a member, or otherwise." Moreover, evidence in the record shows that while the corporation may have ceased to exist on September 10, Meyer and his partner continued to conduct business with Fieldcrest for many months thereafter.[2] Meyer does not allege that Fieldcrest was aware that HDI ceased to exist, and Fieldcrest's credit records indicate that Meyer personally discussed pending orders with Fieldcrest on September 21 and October 17. Meyer cannot escape his obligation to pay on account of the dissolution of HDI when he continued dealing with Fieldcrest and did not inform them of the change in corporate structure.
 
 
 13
 Even if we regarded Meyer's contention as legitimate, he would still be liable for the post-September 10 debt as a primary obligor.[3] Meyer was an officer and director of HDI at the time its charter was revoked, and continued controlling it afterwards. If Meyer continued to transact business as if HDI were a corporation, he would be personally liable for all debts the "corporation" incurred. See Ariz.Rev.Stat. Ann. § 10-204 (West, WESTLAW through Nov. 5, 1996) ("All persons purporting to act as or on behalf of a corporation with actual knowledge that no corporation exists ... are jointly and severally liable ... for all liabilities created while so acting."). Thus, Meyer's claim that the dissolution frees him from debts accruing after September 10, 1990 is meritless. The judgment of the district court is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record.See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 A debt is nondischargeable under § 523(a)(2)(A) when it is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. 523(a)(2)(A). The bankruptcy court found that Meyer never intended to perform on the guarantee, and thus obtained credit from Fieldcrest by a false representation
 
 
 [2]
 While the record in this case relating to the dissolution of HDI is sparse, the record in the other adversarial case arising out of this matter indicates that the state of Arizona revoked HDI's charter on September 10, 1990 for failure to comply with state filing requirements. Meyer and his partner continued to operate the business, though, and reincorporated under the same name in August, 1991. See Meyer, 120 F.3d at 71
 
 
 [3]
 This is a state law question, and neither side indicates which state's law would apply to this question. For purposes of this discussion, we chose Arizona law, as HDI was an Arizona corporation and was physically located in Arizona