■ JONATHAN RUTTENBERG, Respondent, v DAVIDGE DATA SYSTEMS CORPORATION et al., Appellants. [626 NYS2d 174] —Order of the Supreme Court, New York County (Walter Schackman, J.), entered on or about March 11, 1994 which, to the extent appealed from, granted plaintiff's cross-motion for summary judgment on the first and third causes of action and set the matter down for an assessment of damages, reversed, on the law, and the motion denied, without costs.

In this breach of contract action, we are asked to interpret a "buy-sell" agreement signed by plaintiff Jonathan Ruttenberg, and defendant Nicholas A. Davidge, president and owner of the majority of outstanding shares of stock in defendant Davidge Data Systems Corporation. According to the record, Nicholas A. Davidge owns 80 shares of the corporate stock. In round numbers, John W. Davidge, III owns 27 shares, plaintiff owns 6 shares and someone identified only as "Russ" owns or has options to purchase 3.5 shares. Again using round figures, the Davidge family owns more than 90% of the outstanding shares on a fully diluted basis, leaving no doubt that the corporation is closely held.

At issue on plaintiff's motion for summary judgment is the meaning of the sentence: "Upon termination of employment by the Corporation of any Stockholder for any reason whatever, including, but not by way of limitation, death or disability of the Stockholder, all of the shares of the capital stock of the Corporation owned by him or her and to which he or she or his or her personal representatives shall be entitled shall be subject to the terms hereof." The provision states that the

corporation will acquire the shares of the employee at a price to be determined by a formula set forth in section III of the contract.

Plaintiff resigned from the corporation and worked briefly for a law firm. He then took a position with Fusion Systems Corporation, which defendants assert to be in direct competition with Davidge Data Systems Corporation. Defendants, relying on the express language of the buy-sell agreement, refused to purchase plaintiff's stock under these circumstances. Plaintiff then brought this action for breach of contract.

Specifically at issue in this case is whether plaintiff's voluntary departure from his position with the corporation implicates its obligation to acquire his shares under the terms of the buy-sell agreement. It should be noted that plaintiff does not contend he is being deprived of the beneficial ownership of his shares in Davidge Data Systems Corporation. He continues to enjoy the rights of a stockholder, including entitlement to any dividends or distributions which the corporation may declare. Thus, no equitable basis is advanced which might warrant reformation of the parties' contract.

Supreme Court granted plaintiff's motion for summary judgment, referring the matter to a Special Referee for assessment of damages. The court found that the purpose of the agreement was apparent from the face of the instrument, declining defendant's offer of extrinsic proof regarding the parties' intent. The court determined that the interpretation placed upon the disputed provision by defendants "nullifies the purpose of the agreement—to ensure that all stock is held by employees/affiliates of Davidge Corp. accomplished by restricting the transfer of stock."

On appeal, plaintiff similarly argues that the purpose of a buy-sell agreement is "to make sure that the stock in the corporation is in the hands of persons who have a unity of interest in the corporation, generally current officers, directors and employees." Defendants contend that the disputed contract condition "[u]pon termination of employment by the Corporation" means exactly what it says and that Supreme Court erred in expanding the meaning of "termination" to encompass plaintiff's voluntary departure from his position of employment with the corporation.

Where a contract is straightforward and unambiguous, its interpretation presents a question of law for the court to be made without resort to extrinsic evidence *(West, Weir & Bartel*

*v Carter Paint Co.,* 25 NY2d 535, 540). "However, when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment" *(Eden Music Corp. v Times Sq. Music Publs.,* 127 AD2d 161, 164). Applying these rules to an asserted contract ambiguity, the Appellate Division, Second Department, noted: " '[w]here the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law, and * * * no trial is necessary to determine the legal effect of the contract [citations omitted]' * * * 'Mere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact.' " *(Federal Deposit Ins. Corp. v Herald Sq. Fabrics Corp.,* 81 AD2d 168, 180, *lv dismissed* 55 NY2d 602.)

Supreme Court decided that the intent of the parties was clear from the language of the contract, without the need to resort to extrinsic evidence. However, it was plaintiff that raised the issue of conflicting interpretations of the disputed contract provision in the reply brief on his cross-motion for summary judgment. In that plaintiff has conceded the potential ambiguity of the crucial sentence in the contract, it is appropriate to examine the agreement to determine whether, as plaintiff contends, his reading of its terms is the only one that avoids offending both logic and the rules of contract construction.

As noted in *Harris v City of New York* (147 AD2d 186, 191), "It is well settled that, on a motion for summary judgment, the function of the court is one of issue finding, not issue determination" *(see also, IBM Credit Fin. Corp. v Mazda Motor Mfg. [USA] Corp.,* 152 AD2d 451). In deciding the motion before it, Supreme Court observed that there is "no explanation for the absence of any specific provision addressing the buy-back of the stock of an employee who severs his relationship with Davidge Corp." Having identified what it clearly deemed to be an obvious omission in the contract, the court continued, "in the face of an agreement the express purpose of which is to retain control over the stock of the corporation, defendants' contention that Davidge Corp. is not bound by the agreement when a stockholder-employee resigns of his or her own accord not only strains general principles of contract interpretation but defies logic."

Unless it can be said that the intent of the parties is

apparent from the face of the agreement, the conclusion reached by Supreme Court requires weighing the evidence of their intent in drafting the agreement and making a finding of fact. This determination, whether factual or legal, also involves certain assumptions regarding the purpose of a buy-sell agreement, assumptions which are not wholly accurate whether applied to such agreements in general or the subject contract in particular.

In his reply brief on the cross-motion, plaintiff points out that, in interpreting the buy-back provision, defendants construe the phrase "Upon termination of employment by the Corporation" to mean that the obligation to purchase plaintiff's shares only arises on condition that employment is terminated *by* the corporation. Thus, they construe the phrase "by the Corporation" to modify the word "termination". Plaintiff, however, argues that the phrase simply modifies the word "employment", meaning that if his "employment by the Corporation" is terminated, the buy-back provision becomes operative.

Leaving aside, for the moment, the question of which interpretation is preferable, it is clear that one purpose of a buy-sell agreement is, as Supreme Court stated, "to retain control over the stock of the corporation". Yet another is to avoid placing a shareowner in the position of owning unmarketable securities. In the absence of conditions that obligate the corporation to purchase the shareowner's holdings, disposal of shares is governed by the first sentence of the disputed contract provision. Entitled "Restrictions on Transfer", it states, *inter alia,* that shares may not be disposed of or encumbered "without advanced written consent of all other Stockholders". In this regard, it bears emphasis that the owners of the vast majority of shares in this closely held corporation are members of the Davidge family.

Significantly, Supreme Court's memorandum decision emphasizes that "the primary motivation for the agreement was Davidge Corp.'s desire to maintain a long-term relationship with plaintiff, a valued and productive employee". But having identified another obvious purpose of the agreement, it seems to have escaped the court's attention that a buy-sell agreement constitutes incentive to remain with the corporation only if its worth to the valued employee is contingent upon his ongoing affiliation with his employer.

Viewed from this perspective, the absence of a provision for repurchase of shares upon the employee's potential defection

to a competitor can hardly be regarded as an oversight but rather must be taken to be an integral component of the agreement. That plaintiff, now apparently employed by a direct competitor of Davidge Data Systems Corporation, finds himself the owner of unmarketable shares is scarcely accidental but the intended outcome of his disloyalty. By focusing entirely upon one aspect of the contract before it and ignoring another aspect, prominently identified in its memorandum decision, Supreme Court strayed beyond issue identification and embarked upon issue resolution.

Contrary to Supreme Court's conclusion, it neither "strains general principles of contract interpretation" nor "defies logic" that the agreement was drafted to leave the departing employee with securities having no market value. Representing only a minority interest in a closely held concern, plaintiff's small holding cannot be used to impede corporate action or to affect corporate governance. In the absence of significance to the corporation, it is not in the best interests of either the majority shareowners or the corporation to acquire plaintiff's stock. Therefore, the absence of any requirement in the buy-sell agreement obliging the corporation to acquire plaintiff's shares under these circumstances is entirely logical. It should also be noted that, because of the potential for unmarketability, the restrictions on transfer are endorsed on the back of the stock certificates, as required by law (Uniform Commercial Code § 8-204 [a]; *Matter of Bon Neuve Realty Corp.,* 196 AD2d 694).

Plaintiff's position on appeal—that his is the only viable interpretation of the buy-sell agreement—is not supported by an examination of the language of the agreement. Nor is the practical effect of its implementation, as construed by defendants, illogical in light of the acknowledged purpose of the agreement in retaining plaintiff as an employee of the corporation.

Interpreting the contract as plaintiff urges and as Supreme Court purported to do, under general rules of contract construction and without resort to extrinsic evidence, produces a result that is no more beneficial to plaintiff's case. The difficulty arises from his proposed interpretation of the phrase "Upon termination of employment by the Corporation * * * for any reason". The practical effect of reading the words "by the Corporation" as modifying "employment" is to render them nugatory. If, as plaintiff contends, the obligation to purchase stock arises from his separation from his position of employment, the phrase might as well read "Upon termina-

tion of employment \* \* \* for any reason", rendering the words "by the Corporation" mere surplusage.

The law is settled that "such interpretation is not preferred and will be avoided if possible" *(Garza v Marine Transp. Lines,* 861 F2d 23, 27 [2d Cir 1988], citing *Rothenberg v Lincoln Farm Camp,* 755 F2d 1017, 1019 [2d Cir 1985]). It is a recognized " 'rule of construction that a court should not "adopt an interpretation" which will operate to leave a "provision of a contract \* \* \* without force and effect" ' " *(Laba v Carey,* 29 NY2d 302, 308, quoting *Muzak Corp. v Hotel Taft Corp.,* 1 NY2d 42, 46; *Spaulding v Benenati,* 57 NY2d 418, 425). An interpretation that gives effect to all the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation *(Interspiro USA v Figgie Intl.,* 18 F3d 927, 932 [Fed Cir 1994], citing *Laba v Carey, supra; Granite Constr. Co. v United States,* 962 F2d 998, 1003 [Fed Cir 1992], *cert denied* 506 US 1048; *National Equip. Rental v Reagin,* 338 F2d 759, 762-763 [2d Cir 1964], citing *Rentways, Inc. v O'Neill Milk & Cream Co.,* 308 NY 342, 347; *Fortec Constructors v United States,* 760 F2d 1288, 1292 [Fed Cir 1985]; *Systemized of New England v SCM, Inc.,* 732 F2d 1030, 1034 [1st Cir 1984]).

The interpretation proposed by plaintiff offends the rule of construction that a contract shall be read so as to give effect to each and every term and is not supportable as a matter of law. Nor is it necessarily insignificant that the provision uses the expression "Upon termination of employment *by* the Corporation" rather than "Upon termination of employment *with* the Corporation", which would render the contract susceptible to precisely the meaning plaintiff would accord it.

Plaintiff's proposed construction of the buy-sell agreement also removes the burden of proving the condition precedent from the proponent of the contractual obligation (5 Williston, Contracts § 674, at 179-181 [3d ed]; 3A Corbin, Contracts § 749, at 467-468). As this Court emphasized in *Paz v Singer Co.* (151 AD2d 234, 235), "It is black letter law that the burden of proving the existence, terms and validity of a contract rests on the party seeking to enforce it (Fisch, Evidence § 1098 [2d ed])." As we noted in *Lindenbaum v Royco Prop. Corp.* (165 AD2d 254, 258), " 'The party to whom the duty is owed usually has the burden of proving the occurrence of conditions precedent to the performance of the duty. The party burdened by the duty, however, usually has the burden of proving the discharge of his duty by the occurrence of a condition subsequent' (Calamari & Perillo, Contracts § 140, at 228)." Since

plaintiff has, at best, raised an ambiguity in the provision he relies upon, it cannot be said, as a matter of law, that he has proved the occurrence of a condition precedent to defendants' obligation to purchase his stock so as to entitle him to summary judgment.

On its face, the agreement accords plaintiff no right to payment for his shares except "[u]pon termination of employment by the Corporation", including termination on account of death or disability. Plaintiff would have this Court read into the contract an obligation to repurchase his ownership interest upon his voluntary resignation. As noted, this is a situation that is expressly governed by the general provisions of the agreement restricting stock transfer. The imposition upon defendants of the obligation to purchase plaintiff's stock under such circumstances is not the resolution of an ambiguity, as the dissent postulates, but the rewriting of the contract to add a right that it simply does not bestow upon plaintiff. As we stated in *85th St. Rest. Corp. v Sanders* (194 AD2d 324, 326),

"This Court will not rewrite the terms of an agreement under the guise of interpretation *(Halkedis v Two E. End Ave. Apt. Corp.,* 137 AD2d 452, 453, *affd* 72 NY2d 933)."

"Summary judgment is appropriate only where the intent of the parties can be ascertained from the face of their agreement *(see, Pharmaceutical Horizons v Sterling Drug,* 127 AD2d 514, 515, *lv dismissed* 69 NY2d 984), and where determination of that intent requires resort to extrinsic evidence, summary judgment must be denied *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 291; *IBM Credit Fin. Corp. v Mazda Motor Mfg. [USA] Corp.,* 152 AD2d 451, 452)."

Defendants urge that, irrespective of any ambiguity in the language of the agreement, extrinsic evidence should be admitted to establish the parties' intent with respect to purchase of an employee's interest in the corporation. It suffices to say that, in view of the potential ambiguity discerned by plaintiff, there is sufficient lack of clarity within the four corners of the instrument to create a material issue of fact, warranting the introduction of such proof. "When an ambiguity arises from a written agreement, the intention of the parties must be ascertained in the light of the surrounding facts and circumstances. Parol evidence is admissible for this reason" *(Tobin v Union News Co.,* 18 AD2d 243, 245, *affd* 13 NY2d 1155). While the condition at bar is written into the contract and only arguably ambiguous, the observation made in *Hicks v Bush* (10 NY2d 488, 491) is pertinent: "the parol evidence rule does not bar proof of every orally established condition precedent, but only

of those which in a real sense contradict the terms of the written agreement." Defendants have identified the affidavit of Nicholas Davidge as the particular parol evidence upon which they rely and have thus established grounds to defeat plaintiff's cross-motion for summary judgment *(Sutton v East Riv. Sav. Bank,* 83 AD2d 801, *affd* 55 NY2d 550; *Federal Deposit Ins. Corp. v Herald Sq. Fabrics Corp.,* 81 AD2d, *supra,* at 181). Concur—Rubin, Williams and Mazzarelli, JJ.

Murphy, P. J., and Asch, J., dissent in a memorandum by Murphy, P. J., as follows: On the well reasoned opinion of Schackman, J., I would affirm. The purpose of the agreement clearly was to enable the stockholders of defendant closed corporation to retain control, a fact reflected in the "whereas" clause, declaring that "the Stockholders and the Corporation believe that it is in their best interests to provide for certain restrictions on the transfer of the stock of the Corporation now held by them or to be issued to them in the future". Not only is the transfer of shares, by any means, prohibited without the "advanced written consent of all other Stockholders," but "termination of employment by the Corporation of any Stockholder for any reason whatever" authorizes the corporation to purchase, at a price set forth in the agreement, all of the shares of the departing stockholder.

Contrary to the position of defendants, it is clear that defendants' obligation to purchase arises upon the termination of plaintiff's employment with the corporation, not upon his being discharged by the company. Significantly, the phrase "termination of employment by the Corporation of any Stockholder for any reason whatever," specifically states that such termination includes, but is not limited to, the death or disability of the shareholder, neither of which is within the control of the corporation. As the Court of Appeals explained in *Sutton v East Riv. Sav. Bank* (55 NY2d 550, 555), "in searching for the probable intent of the parties, lest form swallow substance, our goal must be to accord the words of the contract their 'fair and reasonable meaning' ".

Under defendants' anomalous construction, an unsatisfactory employee of Davidge Corp., upon being fired, would be required to sell back his stock and receive what defendants call a "parachute", while a perfectly satisfactory employee upon his voluntary departure would be forced to keep his stock and the corporation would have no obligation to repurchase it. Are we to suppose that defendant in drafting the agreement intended to reward dishonest employees while

penalizing those who prior to their resignation had rendered good and loyal service?

Defendants, having given an expansive definition to the word "termination" in the contract may not now complain that, because plaintiff disappointed them by suddenly leaving their employ, it could not have been contemplated that he simply be permitted to walk away with a windfall. "It is established that an ambiguity in a contract must be construed against the party who drafted it" *(BT Commercial Corp. v Blum,* 175 AD2d 43, 44), and the instrument herein was drawn up by defendants.