**In the Matter of KALVAR MICROFILM, INC., Anacomp, Inc., Anacomp International, N.V., Florida AAC Corporation and Xidex Development Company, Debtors.**

**ANACOMP, INC., Plaintiff,**

**v.**

**SMITH BARNEY, INC., Defendant.**

**Bankruptcy Nos. 96–15(HSB) to 96–19(HSB).**

**Adversary No. A–96–178.**

United States Bankruptcy Court, D. Delaware.

Jan. 27, 1997.

Lawrence C. Ashby, Ashby & Geddes, Wilmington, DE, for the Reorganized Debtor.

Mark D. Collins, Richards, Layton & Finger, Wilmington, DE, Mark W. Smith, Latham & Watkins, San Francisco, CA, for Defendant.

*MEMORANDUM OPINION
AND ORDER*

HELEN S. BALICK, Chief Judge.

Anacomp, Inc. has restructured pursuant to a confirmed Chapter 11 plan. Smith Barney, a financial advisor, believes that plan is based upon services it performed for Anacomp pre-petition and that it is entitled to certain advisory fees. Anacomp, however, asserts in this adversary proceeding that Smith Barney is barred from seeking these fees. The central question in this adversary is whether the plan phrase "any unsecured claim arising from or with respect to ... the rendition of services to the debtors prior to the petition date" includes the unpaid fees allegedly owed to Smith Barney. Anacomp and Smith Barney have filed opposing dispositive motions relating to this question. This is the court's Opinion on these core matters. 28 U.S.C. § 157(b)(2)(A) & (B).

## I. The Motions, the Scope of the Record, and the Legal Standard

Anacomp has filed a motion for summary judgment. Fed.R.Bankr.P. 7056. Smith Barney has filed a "motion to dismiss adversary complaint." Docket no. 12. While this latter motion does not cite any bankruptcy rule, the court infers from Smith Barney's briefing that it relies solely upon Fed. R.Bankr.P. 7012(b)(6). Although the two motions are based upon different rules, the briefing in support of the motions address the same set of legal issues from opposite perspectives. The court will consider these issues based upon Smith Barney's motion to dismiss. While the motion to dismiss refers to several documents other than the complaint, all these documents are attached to and are incorporated into the complaint, and these documents may be considered.

The complaint contains five claims for relief. In deciding Smith Barney's motion to dismiss, the court will assume all well-pleaded factual allegations of the complaint are true, and will view reasonable inferences therefrom in the light most favorable to Anacomp. In determining whether the complaint thus viewed states legally sufficient claims, the court will not dismiss any claim

unless it appears beyond doubt that Anacomp can prove no set of facts in support of that claim which would entitle it to relief. *E.g., In re Century Glove*, 151 B.R. 327, 332 (Bankr.D.Del.1993).

## II. *Facts*

Anacomp, Inc. is an Indiana corporation and a former debtor-in-possession in this court. It is a full-service provider of micrographics systems, services, and supplies, and does business in over 60 countries. "Micrographics" is the conversion of information stored in digital form or on paper to microfilm or microfiche. Anacomp also manufactures and distributes a wide range of magnetic storage products. *See generally* docket no. 211 at 14 (disclosure statement).

On May 5, 1995, Anacomp and Smith Barney, Inc. entered into an engagement agreement whereby Smith Barney was to provide financial advice regarding restructuring alternatives. Anacomp agreed to pay Smith Barney $250,000 upon retention, and $125,000 per month thereafter. If certain restructuring circumstances occurred, Anacomp also agreed to pay Smith Barney a $3,500,000 restructuring fee, with Anacomp to receive credit for the above retention and monthly payments.

Anacomp and related companies filed Chapter 11 petitions in this court on January 5, 1996.[1] Because of the pre-negotiated nature of the contemplated restructuring, Anacomp was also able to file on this date a plan of reorganization. The overall purpose of the restructuring embodied in the plan was to achieve changes in Anacomp's capital structure which the company believed would enhance its long-term viability. *Id.* at 1. By the petition date, Anacomp had paid Smith Barney a total of $1,250,000 pursuant to the engagement agreement.

Anacomp did not seek court permission to employ Smith Barney, but instead sought (and received) permission to employ Donaldson, Lufkin, & Jenrette Securities Corporation for the purpose of assisting the debtors

with their restructuring. About five days later, Smith Barney wrote to Anacomp and asserted that the latter had breached the May 5, 1995 engagement agreement by failing to employ Smith Barney in the Chapter 11 cases. In the letter, Smith Barney resigned as financial advisor and terminated the agreement.

A bar date order and notice was sent out to creditors, including Smith Barney. Smith Barney did not file a proof of claim. On May 20, 1996, this court confirmed the debtors' third amended joint plan of reorganization ("the plan").

In September 1996, Smith Barney filed a civil action against Anacomp in the United States District Court for the Northern District of California claiming breach of the engagement agreement. Smith Barney sought $2,250,000, which is the mathematical difference between the payments Smith Barney received pre-petition and the restructuring fee of $3,500,000.

Reorganized Anacomp then filed this adversary proceeding seeking a declaration that any claim for an unpaid restructuring fee has been discharged (claim one), a declaration that Smith Barney's claim is barred by the bar date order (claim two), enforcement of the injunction contained in the confirmation order (claim three), injunctive relief relating to these three counts (claim four), and to recover the $1.2 million in fees paid to Smith Barney pre-petition (claim five).[2] On October 10, 1996, this court entered an order temporarily restraining Smith Barney from proceeding with the California action. The parties then filed their respective dispositive motions. These motions raise issues concerning the interpretation of the plan and bar date order.

## III. *Discussion*

Part of the restructuring concept advocated by the trade creditors of Anacomp and to which Anacomp agreed was that trade claims would "pass through" the bankruptcy, and

---

1. The other companies were Kalvar, Anacomp International, Florida AAC and Xidex Corporation.

2. It is not clear from the record why Anacomp seeks to recover only $1.2 million of the $1.25 million paid to Smith Barney pre-petition.

that each trade creditor would not need to file a proof of claim. Anacomp included plan language to implement this concept. The dispute raised by the motions is whether this language passes through Smith Barney's claim.

### A. Smith Barney's Claim is Unimpaired

Smith Barney's claim is a general unsecured claim. This is not in dispute. General unsecured claims were left unimpaired by the plan. Docket no. 18, § 5.7 (third amended joint plan of reorganization). However, this only starts the analysis, as unimpairment only describes the treatment for an allowed claim. Anacomp argues that Smith Barney does not have an allowed claim and that it is now too late for Smith Barney to seek allowance of its claim.

### B. Smith Barney's Claim is a Trade Claim and an Unimpaired Excepted Claim

In many Chapter 11 reorganization cases, unsecured creditors are required to file proofs of claim on or before a claims bar date. The debtor may then object to one or more of those proofs of claim, and the bankruptcy court has jurisdiction to determine the allowed amount of the claim. *See generally Granfinanciera S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). In the Anacomp Chapter 11 cases, however, consistent with the "pass through" concept, the plan contemplated that as for "unimpaired excepted claims," the above claims adjudication process was not mandatory, and would be invoked only at the option of the holder of such a claim. If the holder of a claim wished to invoke the usual claim process, it *could* file a proof of claim. Docket no. 18, § 8.1(a)(ii).

If no such proof of claim was filed, the plan provided that the allowed amount of an unimpaired excepted claim could be determined "by any court of competent jurisdiction other than the Bankruptcy Court in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved and adjudicated if the Chapter 11 Cases had not been commenced." *Id.,* § 8.1(a)(i). Furthermore, "the rights of

the Holder of such Unimpaired Excepted Claim, if any, . . . shall . . . not be discharged pursuant to Section 1141 of the Bankruptcy Code." § 8.1.

As indicated by the above quoted language, this pass-through option is available only to the holder of an "unimpaired excepted claim," and the nub of the dispute between the parties is whether Smith Barney is such a holder. An "unimpaired excepted claim" was defined as an unimpaired claim, "with respect to which the Holder of such Claim is not required to File a proof of Claim pursuant to the terms of the Limited Bar Date Order." § 1.146.

The Bar Date order states:

> [T]he last day for filing proofs of claim (other than for Excepted Claims) is hereby fixed as February 16, 1996 (the 'Limited Bar Date') . . .

Docket no. 17, at 3. That order further defined eight categories of excepted claims. Category seven was:

> Claims arising from or with respect to the sale and delivery of goods or the rendition of services to any of the Debtors and all other obligations incurred in the ordinary course of business by any of the Debtors . . .

*Id.* at 2.

Virtually identical language appears in the plan at section 1.143 of the plan, which defines "Trade Claim" as:

> [A]ny unsecured Claim arising from or with respect to (i) the sale and delivery of goods or the rendition of services to the Debtors prior to the Petition Date and (ii) all other obligations incurred in the ordinary course of business by the Debtors in the conduct and operation of their business prior to the Petition Date.

Smith Barney argues its claim for fees falls within this definition of trade claim, and similarly, within the definition of category seven of the claims excepted from the bar date order. Anacomp argues that category seven excepted claims do not include Smith Barney's claim and that therefore Smith Barney was required to file a proof of claim, which it did not. The parties agree that the language

of section 1.143 and the above quoted language of category seven should be interpreted identically. Because the briefing focuses on the plan language, and because reference to the plan language is facilitated by the (i) and (ii) clauses, the court will refer to the plan language in ruling upon the parties' dispute.

█ The dispute over the interpretation of section 1.143 focuses upon the effect of the language of clause (ii) upon the language of clause (i). Anacomp argues clause (ii) modifies clause (i) so that clause (i) in effect reads:

Any unsecured claim arising from ... (i) the sale and delivery of goods or the rendition of services to the debtors prior to the petition date *and arising in the ordinary course of business of the debtors.*

The italicized language is that which Anacomp wishes the court to read into clause (i). If Anacomp's interpretation is correct, then Smith Barney's claim for unpaid restructuring fee, which did not arise in the ordinary course of Anacomp's business, is not a "trade claim."[3] Smith Barney, on the other hand, argues clause (i) should be construed exactly as written, and that clause (ii) refers to any claim based upon an obligation that arose out of neither the sale and delivery of goods, nor the rendition of services, but that arose out of the ordinary course of the debtors' business.

The plan provides that New York law governs the construction of the plan. Docket no. 18, § 14.10. Both parties rely upon certain New York rules of construction for their respective and opposing interpretations of section 1.143. Anacomp relies upon the rule that language should be read so as to give meaning to all the terms. *E.g., Ruttenberg v. Davidge Data Systems Corp.,* 215 A.D.2d 191, 626 N.Y.S.2d 174, 177–78 (1995). Anacomp argues that Smith Barney's interpretation would render meaningless the word "other" in clause (ii), because if clause (i) was not intended to incorporate the ordinary course limitation, there would be no need to use the word "other" in clause (ii). However, "other" still has meaning under Smith Bar-

ney's interpretation, because "other" modifies obligations. The phrase "other obligations" provides a parallel to the noun chain in clause (i) and that is then modified by "incurred in the ordinary course of business."

Indeed, Smith Barney relies upon the same rule of construction as does Anacomp to support *its* argument:

Anacomp's reading renders all of clause (i) superfluous. To convey clearly the meaning urged by Anacomp, the definition need only have said simply that a trade claim was 'any unsecured Claim arising from or with respect to all obligations incurred in the ordinary course of business by the Debtors.'

Docket no. 19 (Smith Barney's Reply Memorandum) at 7.

Perhaps an even more significant problem with Anacomp's argument, as aptly put by Smith Barney, is that:

[A] general unsecured creditor attempting in good faith to determine whether it was required to file a proof of claim, or whether instead it could pursue its claim in a non-bankruptcy forum, would have had to do ... the following: (1) suspect that the first clause of the definition of Trade Claim ... did not mean what it said; [and] (2) conclude that the clause was not independent, but had to be interpreted as materially limited by the second clause referring to 'other obligations incurred in the ordinary course of business.'

Docket no. 19 at 8. This interpretive burden should not be placed upon a creditor. Anacomp's choice of language in section 1.143 is just one of the unfortunately many instances this court observes where the drafters' language is verbose and redundant. The court will not allow this verbosity to redound to Anacomp's benefit. *E.g., Winston v. Mezzanine Investments L.P.,* —— Misc.2d ——, 648 N.Y.S.2d 493, 499 (N.Y.Sup.Ct.1996) (ambiguity in the language of a contract is construed against the drafter of the language).

Anacomp alternatively argues that Smith Barney's fee claim does not at all arise out of services rendered, but out of a contract, and

---

**3.** Any argument by Smith Barney that its claim for unpaid restructuring fees arises out of services rendered to Anacomp in the ordinary course of Anacomp's business is without merit.

for that reason alone, does not fall within the definition of a "trade claim." This argument is unsupported by the record and is without merit.

Thus, Smith Barney's claim is a trade claim within the meaning of the plan, and is an unimpaired excepted claim within the meaning of the bar date order. Section 8.1 of the plan excepts this type of claim from the general discharge of the plan. Claims one and two of the complaint are dismissed.

Claim three of the complaint seeks enforcement of the injunction of the plan (contained in section 12.4). That injunction contains a exception for a claim of the type Smith Barney holds, and the court does not understand Anacomp to assert in its brief any reasons independent from those discussed above for the enforcement of section 12.4. The plan did not enjoin Smith Barney from commencing its California action. Claims three and four are dismissed.

## C. *The Fraudulent Transfer Claim*

 Anacomp paid Smith Barney $1.25 million in fees pre-petition. Claim five attempts to recover $1.2 million of those fees under a fraudulent transfer claim. In its motion to dismiss, Smith Barney argues Anacomp released this claim pursuant to section 12.1 of the plan. That section, entitled "Releases," states:

> On the Effective Date, Reorganized Anacomp shall be deemed to release . . . each present or former officer, director, shareholder, employee, consultant, attorney, accountant and other representatives of the debtors . . . from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever . . . based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Chapter 11 Cases or the Plan. . . .

Docket no. 18 at 37. Anacomp argues section 12.1 does not apply to Smith Barney, for two reasons.

First, Anacomp argues that Smith Barney was not a "representative[ ] of the debtors." The plan defines "debtor" to mean "Kalvar, Anacomp, Anacomp International, Florida AAC and Xidex, individually or collectively, as the context may require." Docket no. 18, § 1.42. All these entities existed prior to the filing of the Chapter 11 petitions. This definition does not establish a chronological starting point, and indeed suggests that "debtor" could refer to one of the Anacomp companies pre-petition. For example, section 1.143 of the plan, previously discussed in this Opinion, uses the term "debtor" in a pre-petition context. Anacomp's argument is without merit.

Second, Anacomp argues that the fraudulent transfer claim is not based upon acts that "in any way relat[e] to the Chapter 11 cases or the Plan" ("the plan" is defined as the third amended joint plan). Smith Barney rejoins it provided financial advice regarding capital restructuring alternatives, docket no. 1, ¶ 5, that the plan was substantially similar to one prepared by Smith Barney pre-petition, and argues that therefore, the advice and pre-petition payments for that advice are related to the chapter 11 cases or the plan within the meaning of section 12.1, and that therefore, Reorganized Anacomp has released Smith Barney.

It merits repeating that on Smith Barney's motion to dismiss, the court assumes all well-pleaded factual allegations of the complaint are true, and views reasonable inferences therefrom in the light most favorable to Anacomp. The court will not dismiss claim five unless it appears beyond doubt that Anacomp can prove no set of facts in support of that claim which would entitle it to relief. The complaint alleges that the plan that was filed on the petition date did not have the consent of the holders of certain classes of debt, docket no. 1 at ¶ 19, and that on the petition date, Smith Barney had not earned any restructuring fee. *Id.* at ¶ 25. Assuming these allegations to be true, and drawing all reasonable inferences therefrom, the court can not conclude as a matter of law that the fraudulent transfer claim relates to the third amended joint plan. Smith Barney's motion to dismiss claim five must be denied. This ruling, however, is not based upon the merits of the parties' arguments, but because the court considers the present

record on this issue to be insufficient to rule. Therefore, Anacomp's motion for summary judgment on claim five must also be denied.

## IV. *Conclusion*

The other arguments of the parties need not be addressed. An order in accordance with this Opinion is attached.

### *ORDER*

AND NOW, January 27, 1997, for the reasons stated in the attached Memorandum Opinion, IT IS ORDERED THAT:

1. The restraining order of October 10, 1996 (docket no. 8) is **DISSOLVED** immediately.

2. The claim of Smith Barney for an unpaid restructuring fee is a "trade claim" within the meaning of section 1.146 of the third amended joint plan of reorganization, and has not been discharged.

3. Smith Barney's claim is not barred by the bar date order.

4. As to claims one, two, three, and four of Anacomp's complaint (docket no. 1), Anacomp's motion for summary judgment is **DENIED,** and Smith Barney's motion to dismiss is **GRANTED.**

5. As to claim five of the complaint, which seeks to recover the $1.2 million in fees paid to Smith Barney pre-petition, Smith Barney's motion to dismiss is **DENIED,** and Anacomp's motion for summary judgment is **DENIED.**