BARTON MARK PERLBINDER et al., Appellants, v BOARD OF MANAGERS OF THE 411 EAST 53RD STREET CONDOMINIUM, Respondent. [886 NYS2d 378]—

Judgment, Supreme Court, New York County (Marilyn Shafer, J.), entered October 1, 2008, dismissing the complaint and bringing up for review an order, same court, Justice and entry date, which, inter alia, denied plaintiffs' motion for summary judgment and granted defendant's cross motion for summary judgment dismissing the complaint unanimously reversed, on the law, without costs the judgment vacated in its entirety, the motion granted and cross motion denied. The matter is remanded for a determination as to damages.

Plaintiffs were partners in East 85th Street Company when it began to convert the building it owned at 411 East 53rd Street to condominium ownership. The conversion was completed in 1986, at which time plaintiffs acquired title to 16 unsold units in the newly formed condominium.

In November 1987, the condominium held its first board elections. Pursuant to section 2.7 of the condominium bylaws, plaintiff Barton Mark Perlbinder (Perlbinder) was designated by the sponsors' "designees" to be a "Sponsor Representative" on the Board. He remains a board member to this date.

In April 1988, an 11th amendment to the offering plan was filed, identifying which partners had received unsold units in 1986, and providing that each such partner is a "designee" of

the sponsor. A 12th amendment, filed in November 1989, contained similar information.

On October 25, 2007, Perlbinder faxed a letter to the condominium's managing agent, advising that, pursuant to section 5.8 (C) of the bylaws, plaintiffs intended to install a 24-inch-by-30-inch sign on the building, advertising the availability for sale of one of the remaining six original units still held by them. On October 29, the managing agent responded by letter requesting additional information about the sign—specifically, a drawing, dimensions, proposed location, type of material, and method of attachment to the building. This request went unanswered, and on November 13, plaintiffs, purporting to act as sponsor designees, had the sign installed next to an existing sign placed on the building by the management company. According to plaintiffs, their sign was designed to "coordinate" with the management company's sign and be installed at the same elevation so as to complement the existing sign.

Shortly thereafter, defendant's executive committee conducted an "informal poll" of all the board members, except for Perlbinder. Defendant directed that the sign be removed. Perlbinder was not consulted because the executive committee considered him to be an "interested party in the matter." On November 14, 2007, the sign was removed.

Plaintiffs thereafter commenced this action seeking, inter alia, a declaration that they have the right to place signs on the building as provided in the bylaws of the condominium as well as injunctive relief barring defendant from removing or interfering with any signs erected pursuant to those bylaws. Plaintiffs also sought damages for breach of defendant's fiduciary duty by unjustifiably interfering with their right to advertise the unsold units. Issue was joined, consisting of denials and affirmative defenses; one such affirmative defense contended that plaintiff's claims were barred by the business judgment rule. Defendants did not seek any affirmative relief.

In denying plaintiffs' motion and granting defendant's cross motion for summary judgment, the court determined that the right of the sponsor set forth in the declaration to put up "for sale" signs was distinct from the broader right to use the condominium common elements, thus giving the right to post sales signs solely to the sponsor and not its designees. Noting that the bylaws provided that in the event of inconsistent provisions, the declaration would control, the court ruled that section 5.8 (C), relied on by plaintiffs, was overruled by the declaration's exclusive reservation of that right to the original sponsor.

In construing a contract, "An interpretation that gives effect

to all the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation" (*Ruttenberg v Davidge Data Sys. Corp.*, 215 AD2d 191, 196 [1995]). Therefore, "where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect" (*Proyecfin de Venezuela, S.A. v Banco Indus. de Venezuela, S.A.*, 760 F2d 390, 395-396 [2d Cir 1985]; *see G&B Photography v Greenberg*, 209 AD2d 579, 581 [1994]). Furthermore, "agreements executed at substantially the same time and related to the same subject matter are regarded as contemporaneous writings and must be read together as one" (*Flemington Natl. Bank & Trust Co. [N.A.] v Domler Leasing Corp.*, 65 AD2d 29, 32 [1978], *affd* 48 NY2d 678 [1979]).

To apply these principles here, it is necessary to examine the provisions of the various condominium documents relied on by the parties.

Article 10 (c) of the condominium declaration provides, in pertinent part, that "the Sponsor and its successors, assignees, invitees, licensees, contractors, employees, agents and tenants shall have an easement in, over, under, through and upon the [Building's] Common Elements to use the same, without being subject to any fee or charge, for all purposes and activities in connection with the sale or renting of Unsold Units . . . In addition, the Sponsor reserves the right, to the extent permitted by Law, to use one or more portions of the Common Elements, as designated by the Sponsor in its sole discretion, for sales, rental, or display purposes, which right shall include, without limitation, the right to place 'for sale', 'for rent' and other signs and promotional materials, of such size and content as the Sponsor shall determine, in, on, about and adjacent to the Building (including on the exterior walls thereof) and the Property."

Section 5.8 (C) of the bylaws, in turn provides, in pertinent part: "The Sponsor or its designee shall have the right, without charge or limitation, to: (i) erect and maintain signs, of any size or content determined by the Sponsor or such designee, on or about any portion of the General Common Elements chosen by the Sponsor or such designee, including, without limitation, on the exterior walls of the Building or adjacent to the main entrance thereof; . . . and (iii) do all things necessary or appropriate, including the use of the General Common Elements, to sell, lease, manage, or operate Unsold Units . . . In no event, however, shall the Sponsor or such designee be entitled to use any Common Elements in such a manner as will unreasonably interfere with the use of any Unit for its permitted purposes."

Here, the declaration and the bylaws were executed as part of

the same transaction and cross-reference one another. The bylaws are incorporated as exhibit D to the declaration. Together, the declaration, bylaws and condominium rules and regulations are expressly defined as the "Condominium Documents." The declaration and bylaws, thus, "constitute part of the same transaction" and "must be interpreted together" (*BWA Corp. v Alltrans Express U.S.A.*, 112 AD2d 850, 852 [1985]).

Instructive in this regard is *Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc.* (63 NY2d 396 [1984]), which involved construction of two lease provisions—one permitting the tenant to make "any interior non-structural alterations" (paragraph 6 [a]) and the other permitting the tenant to subdivide the premises (paragraph 12). The question was whether the tenant had the power to make structural changes in order to facilitate the authorized subdivision. The court, noting that the goal was to "avoid an interpretation that would leave contractual clauses meaningless" (*id.* at 403) held that the lease's grant of power to make "non-structural alterations" impliedly withheld the power to make structural changes. To hold otherwise would render paragraph 6 (a) meaningless.

Arguing here that the last sentence of article 10 (c) reserves the right to post signs to the original sponsor alone would render meaningless section 5.8 (C)'s express extension of that power to the sponsor and its designees. Indeed, the term "designee" has a generally accepted legal meaning and is defined in Black's Law Dictionary as "a person who has been designated to perform some duty or carry out some specific role." These two provisions can be harmonized by construing article 10 (c) as simply reserving to the sponsor the right to post signs without intending it to preclude others. Section 5.8 (C) would supplement article 10 (c) by granting that power to the sponsor's designees as well as the sponsor itself. Moreover, the declaration, being a more basic document, expressly designed to comply with "the provisions of the Condominium Act and establish a regime" for condominium ownership, would of necessity be less detailed than the bylaws which supply information not contained in the declaration.

When viewed together, the bylaws and declaration grant the sponsor or "designee" the right to post signs advertising the availability of unsold units, provided that such signs do not unreasonably interfere with the permissible use of any unit. There being no issue of fact relevant to the interpretation of either the declaration or the bylaws, plaintiff's motion for summary judgment should have been granted.

Plaintiffs also assert that defendant breached its fiduciary duty when it refused to permit them to erect their "for sale" sign on the facade of the building. Defendant asserts as an affirmative defense that its decision is protected by the business judgment rule.

The business judgment rule is applicable to the board of directors of cooperative and condominium corporations (*Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530 [1990]; *Helmer v Comito*, 61 AD3d 635 [2009]). Under that rule, a court's inquiry "is limited to whether the board acted within the scope of its authority under the bylaws (a necessary threshold inquiry) and whether the action was taken in good faith to further a legitimate interest of the condominium. Absent a showing of fraud, self-dealing or unconscionability, the court's inquiry is so limited and it will not inquire as to the wisdom or soundness of the business decision" (*Schoninger v Yardarm Beach Homeowners' Assn.*, 134 AD2d 1, 9 [1987]). However, the rule will not serve to shield boards from actions that have no legitimate relationship to the welfare of the condominium, or that deliberately single out individuals for harmful treatment (*see Katz v 215 W. 91st St. Corp.*, 215 AD2d 265, 266-267 [1995]).

It is uncontroverted that the CEO of the condominium's management company is also a board member. The wife of another board member is in the real estate business. Nor is it in question that Perlbinder, although a board member, was not notified that the executive committee had made a decision to remove the sign. Although the Board defended this action on the basis that Perlbinder was an "interested party," the same could be said of the other two board members.

Additionally, defendant's justification for removing the sign—i.e., because it detracts from the building's appearance—is belied by the fact that the management company's sign is also annexed to the building. Defendant does not assert that plaintiffs' sign was unreasonably large or otherwise interfered with the use of the building by the tenants; nor does it deny that plaintiff's sign was compatible with that of the management company.

Therefore, defendant's refusal to allow plaintiffs to place a sign on the building while keeping the managing company's sign in place did not further any legitimate corporate purpose and unfairly singled out plaintiffs. This action, coupled with defendants action in excess of its authority in refusing to recognize plaintiffs' rights as "designees" of the sponsor to place signage without board approval places its actions beyond the protection of the business judgment rule. Plaintiffs were entitled

to summary judgment on this cause of action. A hearing is necessary to determine the amount of damages with respect to the third cause of action for breach of fiduciary duty. Concur—Tom, J.P., Saxe, Sweeny, Acosta and Abdus-Salaam, JJ.