Upon remittitur from the Court of Appeals (Biotronik A.G. v Conor Medsystems Ireland, Ltd., 22 NY3d 799 [2014]), judgment, Supreme Court, New York County (Bernard J. Fried, J.), entered November 21, 2011, dismissing the complaint, unanimously reversed, on the law, without costs, and the matter remanded for further proceedings in accordance herewith.
In this action for breach of a distribution agreement, this Court previously held that a contractual provision that prohibited recovery for consequential damages barred plaintiff Biotronik’s claim for lost profits (Biotronik A.G. v Conor Medsystems Ireland, Ltd., 95 AD3d 724 [1st Dept 2012], affg 33 Misc 3d 1219[A], 2011 NY Slip Op 51980[U] [Sup Ct, NY County 2011]). The Court of Appeals reversed on the ground that the lost profits were direct and not consequential damages under the agreement (Biotronik A.G. v Conor Medsystems Ireland, Ltd., 22 NY3d 799 [2014]).
This case is now before us with respect to defendants’ claim that they are entitled to summary judgment on the issue of liability because no breach occurred.* We did not reach the issue in our prior decision because our ruling that Biotronik only suffered consequential damages disposed of the case.
Briefly, the facts are as follows: in May 2004, plaintiff Biotronik and defendant Conor Medsystems Ireland entered into a distribution agreement under which Conor, a medical device manufacturer, agreed both to sell plaintiff a supply of coronary stents that Conor produced and to appoint Biotronik the stents’ exclusive distributor in certain European countries. However, because defendants did not obtain European regulatory approval for the stents until February 2006, Biotronik did not begin selling the stents until early 2006. In 2007, Johnson & Johnson acquired Conor and later that year began selling a different model stent on the international market and dis *552 continued producing the stent for which Biotronik was the exclusive distributor.
Plaintiff commenced this action for, among other things, breach of contract. Inasmuch as plaintiff s contract with Conor continued until the end of 2007, plaintiff sought as damages profits that plaintiff claimed it would have made from reselling Conor’s stents to third parties if defendants had continued to furnish them as provided in the agreement. As discussed above, Supreme Court dismissed the claims for lost profits but allowed other claims to go forward and denied defendants’ cross motion for summary judgment on liability (33 Misc 3d 1219[A], 2011 NY Slip Op 51980[U]).
The distribution agreement contains three relevant provisions: section 7, titled “Assurance of Supply,” provides that Conor shall give Biotronik at least one year’s notice before discontinuing its manufacture of the stent. “Where possible,” section 7 continues, the parties shall agree on a replacement for the discontinued stent, but if no agreement is reached, Biotronik has the right to terminate the distribution agreement on 30 days’ notice.
Section 10.7, titled “Product Recall,” provides that if either party believes a product recall in Biotronik’s sales territory is “desirable or required by law,” the parties “shall . . . discuss reasonably and in good faith whether such recall is appropriate or required and the manner in which any mutually agreed recall should be handled.”
Finally, section 10.7, titled “Remedial Actions,” gives Conor the “exclusive right and obligation to issue recalls, safety alerts, advisory notices or similar remedial actions on the [stents].”
Biotronik contends that defendants breached the distribution agreement by discontinuing the stents in 2007 without giving the requisite notice and trying to provide plaintiff with a replacement stent in accordance with section 7. Defendants claim that, under section 10.7, they had the right to stop production because they had issued a recall. Plaintiff contends that section 10.7 only applies to recalls for safety concerns and that defendants were motivated by financial issues. Plaintiff further argues that, even if the recall was in accordance with section 10.7, defendants nevertheless breached their obligation to give notice and continue to supply a suitable replacement.
Supreme Court found that the term “recall” as used in section 10.7 is ambiguous and that defendants were still obligated under section 7 to give appropriate notice. Thus, it held that even if defendants had recalled the stents out of safety concerns, there was still an issue of fact as to whether defendants *553 breached their obligations under section 7 (see 33 Misc 3d 1219[A], 2011 NY Slip Op 51980[U]).
We agree with the court’s determination denying summary judgment to defendant. The record raises an issue of fact as to what motivated the recall and whether defendants fulfilled their obligations under section 7, which refers to the stents’ discontinued production for any reason. Section 10.7 only applies to discontinued production in connection with a safety recall of the stents.
A contract should be read to give meaning and effect to each of its provisions (see Perlbinder v Board of Mgrs. of 411 E. 53rd St. Condominium, 65 AD3d 985, 986-987 [1st Dept 2009]). Thus, defendants’ obligations under section 7 cannot apply to stent recalls made as a “remedial action” under section 10.7. Otherwise, section 10.7 would be superfluous. Because section 7 governs the stents’ discontinuance for any reason, defendants’ recalls under section 10.7 must be for the specific reasons identified in sections 10.6 and 10.7, so that section 10.7 is not rendered superfluous.
Defendants further contend that the Supreme Court improperly denied that portion of their cross motion seeking summary judgment on the cause of action for breach of contract based on plaintiffs claims that they furnished stents that did not conform with the initial specifications under the supply contract and later materially altered the stents’ design, which made them less efficacious. Summary judgment was properly denied because there are issues of fact and of contract interpretation with regard to defendants’ motivation for discontinuing stent production, the stents’ conformity with contractual specifications, and the materiality of the changes that defendants made to the stent without plaintiffs knowledge, that must be resolved in order to determine whether defendants breached the contract.
Based on our holding and the Court of Appeals’ determination that Biotronik’s lost profits constitute direct damages in this case, we remand for a trial on both liability as set forth above and damages as set forth in the Court of Appeals decision.
Concur—Friedman, J.E, Andrias, Moskowitz, Freedman and Manzanet-Daniels, JJ.

 Supreme Court denied defendants’ cross motion for summary judgment but ultimately dismissed the action on the ground that plaintiff only claimed consequential damages (33 Misc 3d 1219[A], 2011 NY Slip Op 51980[U]).