Matter of 195 B Owner LLC v Anthropologie, Inc. (2024 NY Slip Op 03073)

Matter of 195 B Owner LLC v Anthropologie, Inc.

2024 NY Slip Op 03073

Decided on June 06, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 06, 2024

Before: Webber, J.P., Oing, Kapnick, Rosado, JJ. 

Index No. 303448/22, 570093/23 Appeal No. 2451 Case No. 2023-05071 

[*1]In the Matter of 195 B Owner LLC, Petitioner-Respondent,
v
Anthropologie, Inc., Respondent-Appellant. 

Faegre Drinker Biddle & Reath LLP, New York (Brian P. Morgan of counsel), for appellant.
Rosenberg & Estis, P.C., New York (Dejan Kezunovic of counsel), for respondent.

Order of the Appellate Term, Supreme Court, First Department, entered June 30, 2023, which reversed a judgment, Civil Court, New York County (Ilana J. Marcus, J), entered January 18, 2023, upon an order, same court and justice, entered on or about November 21, 2022, dismissing landlord's petition and awarding respondent tenant damages, reinstated the petition and remanded for further proceedings, unanimously reversed, on the law, without costs, the Civil Court judgment reinstated to the extent it dismissed the petition, and the matter remanded to Civil Court for recalculation of damages to be awarded to respondent in accordance with this decision.
Pursuant to the lease between the parties, respondent Anthropologie was permitted to use the premises owned by petitioner "solely as and for the operation of a high-quality retail store selling (and displaying)" goods. Section 20 of the lease contains a contractual "taking" clause, which provides that, in the event of a temporary taking, tenant's obligation to pay rent would be reduced and its obligations suspended. Section 20(a) defines a "taking," in relevant part, as occurring when a "[t]enant is denied or deprived of either the use, occupancy and/or enjoyment of the [premises] and/or the ability to operate its business thereon or therefrom by action or decree of any lawful power or authority."
March 20, 2020, in response to the COVID-19 pandemic, on the Governor issued Executive Order 202.8, which required nonessential businesses to "reduce [their] in-person workforce at any work locations by 100% no later than March 22 at 8 p.m." As a result of the Executive Order, from March 22, 2020 until June 22, 2020, tenant closed its store and ceased operating a retail store at the premises.
"Under long-standing rules of contract interpretation, where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole" (Tomhannock, LLC v Roustabout Resources, LLC, 33 NY3d 1080, 1082 [2019] [internal quotation marks omitted]). Additionally, a "contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect" (Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d 572, 581 [2017] [internal quotation marks omitted]; see also Perlbinder v Board of Mgrs. of 411 E. 53rd St. Condominium, 65 AD3d 985, 986-987 [1st Dept 2009]). "[A]greements negotiated at arm's length by sophisticated, counseled parties are generally enforced according to their plain language pursuant to our strong public policy favoring freedom of contract" (159 MP Corp. v Redbridge Bedford, LLC, 33 NY3d 353, 356 [2019]).
Affording the words of the lease their plain meaning, a "taking" occurs under the lease in one of two ways: either when the tenant is deprived of "the [*2]use, occupancy and/or enjoyment" of the premises, "and/or" when it is deprived of "the ability to operate its business thereon or therefrom." The phrase "and/or" is commonly used in contracts to reflect "both or either" of a set of conditions or items (see Daughters of Sarah Nursing Home Co. v Lipkin, 145 AD2d 808, 808 [3d Dept 1988]; see also Matter of Cassano v Cassano, 85 NY2d 649, 655 [1995] [statutory interpretation]). Accordingly, as the Civil Court properly found, under the lease a taking can occur when, as in this case, the tenant is unable to "operate its business" on the premises. The interpretation of the lease adopted by the Appellate Term, following Delshah 60 Ninth, LLC v Free People of PA, LLC, 2022 WL 3536133, *2, 2022 US Dist LEXIS 148033, *5 [SD NY Aug. 17, 2022, No. 20CV5905 (JMF/SLC)]), required tenant to establish that it was "deprived of all use or occupancy of the leased space." That interpretation improperly renders the alternate phrase "operate its business" meaningless and without effect (see Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d at 581).
Contrary to landlord's contention, this interpretation of the lease is not "absurd, commercially unreasonable or contrary to the reasonable expectations of the parties" (In re Lipper Holdings, LLC, 1 AD3d 170, 171 [1st Dept 2003]). Instead, it gives effect to the contract negotiated by sophisticated parties who allocated the risk of a government shutdown of tenant's business operations at the premises to the landlord (see 159 MP Corp., 33 NY3d at 361).
Landlord's contention that tenant continued to store goods at the premises does not mean that tenant was operating its business, since the lease describes storage use as only "ancillary" to tenant's "operation of a high-end retail store" selling goods, and only permits storage and office use "together with" the operation of a retail store. Since the Executive Order denied and deprived tenant of its ability to operate its retail store business on the premises, it resulted in a taking under the lease.
Landlord's further argument that "retail" use can encompass online transactions relies on Delshah, in which the lease permitted the tenant to use the premises for "general retail use," which the federal court found was "comprehensive and . . . not limited only to in-person display and sale of apparel" (Delshah 60 Ninth, LLC, 2022 WL 3536133, *2, 2022 US Dist LEXIS 148033, *5). The lease in this case, in contrast, specifically provides that use of the premises is "solely" limited to "operation of a retail store," which plainly refers to a brick-and-mortar store located in the premises.
While use of the premises for storage does not negate the finding of a "taking" under the lease, such use might nonetheless factor into damages as the taking provision provides, in relevant part, that "the Rent due hereunder shall be reduced proportionately by the square footage of the Leased Space which is so [*3]affected," indicating that some apportionment might be called for. Accordingly, on remand for calculation of damages, the court should take into consideration what part of the premises may have been used for storage or other purposes.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 6, 2024